*ComUnity Terms Letter*
*Page 2*

April 14, 1995

    ii)    Individual loans comprising a Delivery and which are the subject of a Direct Trade may be of different loan types (e.g. conventional and government, 30 Year and 15 Year, etc.) and may have note rates that would not otherwise qualify all such loans for inclusion in the same mortgage backed security.

    iii)    All loans comprising a Delivery shall be delivered to and received by CFC no later than five (5) business days after the date the related Direct Trade was entered into.  Upon entering into a Direct Trade, Seller shall have a mandatory obligation to deliver all loans comprising the Delivery within such five business day period, such that any portion of the Delivery which is not filled within such time frame shall be subject to a mark to market pair-off fee which Seller shall pay to CFC.

    iv)    CFC shall price each individual loan which is the subject of a Direct Trade separately at a price equal to the bid price obtainable by CFC at the time of the Direct Trade, for the forward sale of the mortgage backed security with the highest coupon (the "Applicable Security") into which such loan can be pooled by CFC. To the extent that the individual loan being priced is a conventional loan and can be included in either a FNMA MBS or FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types CFC is to base its price quote on. The issue date and related forward settlement date of the Applicable Security on which the loan price shall be based, will be determined by reference to that date during the month on which the corresponding Delivery is to be received by CFC pursuant to the provisions of paragraph 12 below.

3.    Term of Contract:    Six months.

4.    Loan types:    Loans qualifying for delivery hereunder shall be FNMA and FHLMC conforming and FHA insured and VA guaranteed mortgage loans underwritten, closed, and delivered pursuant to the guidelines in CFC's Correspondent Lending Division's Seller Manual (the "Guide").

5.    Delivery volume:    A minimum of $5 million and a maximum of $15 million aggregate principal balance per month.

6.    Types of trades which may be assigned (under AOT Program) or on which Direct Trade prices will be based:

| FNMA MBS | FHLMC GOLD PC |
|----------|---------------|
| GNMA I | GNMA II |

7.    Servicing Pricing Definitions:    "Delivery": the group of loans to be delivered for purchase associated with a particular trade to be assigned.

"Gross Spread": the difference between note rate on a loan and the security coupon on its associated trade.

"Net Spread":  the difference between the Gross Spread and the Adjusted Guarantee Fee.

"Base Guarantee Fee": shall be the following as applicable:

| FHLMC PC | = | 0.23% |
| FNMA MBS | = | 0.20% |
| GNMA I & II | = | 0.06% |

*ComUnity Terms Letter*                                        April 14, 1995
*Page 3*

"Adjusted Guarantee Fee": shall be the Base Guarantee Fee as adjusted for any allowable Buyups or Buydowns of such Base Guarantee Fee pursuant to Paragraph 8 below.

"Base Spread" : 0.25% (25 basis points) for conventional loans and 0.44% (44 basis points) for government loans.

"Excess Spread": the excess of Net Spread over the Base Spread.

"Excess Margin": on FHA or VA ARM loans, the amount of the mortgagor's Gross Margin in excess of 2.0%.

8.   Buyups and Buydowns:     Buyups and Buydowns of the Guarantee Fee will be applied to the extent allowable per FNMA/FHLMC guidelines at the standard multiples as published by FHMLC and FNMA at time of Delivery. The purchase price of a mortgage loan shall be increased by any Buyup credit applied, and decreased by any Buydown cost applied.

9.   Service Released Premium Percentages - Conventional Loans

|                                                          | 30 YR | 15 YR |
|----------------------------------------------------------|-------|-------|
| Base Price for Non-California loans with T&I impounds     | 1.65% | 1.40% |
| Base Price for Non-California loans without T&I impounds  | 1.40% | 1.15% |
| Base Price for California loans with T&I impounds         | 1.50% | 1.25% |
| Base Price for California loans without T&I Impounds      | 1.40% | 1.15% |

Service Released Premium Percentages - Government Loans

|                                                          | 30 YR | 15 YR |
|----------------------------------------------------------|-------|-------|
| Base Price for Non-California FHA and VA fixed rate loans | 2.20% | 1.85% |
| Base Price for Non-California FHA and VA ARM loans        | 1.65% |       |
| Base Price for California FHA and VA fixed rate loans     | 2.15% | 1.85% |
| Base Price for California FHA and VA ARM loans            | 1.65% |       |

10.  Premiums for Excess Spread:

CFC shall pay the following additional premiums for Excess Spread (e.g. excess servicing):

| Loan Type          | Premium    | Max. Excess Spread |
|--------------------|------------|--------------------|
| Conv. 30 year      | 4.00 to 1  | 0.25%              |
| Conv. 15 year      | 3.50 to 1  | 0.25%              |
| Gov't 30 year      | 4.00 to 1  | 0.50%              |
| Gov't 15 year      | 3.50 to 1  | 0.50%              |
| Gov't ARM-30 year  | 3.00 to 1* | 0.50%              |

*Must have a corresponding amount of Excess Margin.

*ComUnity Terms Letter*
*Page 4*

April 14, 1995

11.     Premiums for Excess Margin:

CFC shall pay the following additional premium for Excess Margin:

| Loan Type | Premium | Excess Margin |
|-----------|---------|---------------|
| Gov't ARM-30 year | 2.25 to 1 | 0.01%- 0.25% |
| Gov't ARM-30 year | 1.75 to 1 | 0.26%- 0.50% |
| Gov't ARM-30 year | 1.00 to 1 | 0.51%- 0.75% |
| Gov't ARM-30 year | 0.50 to 1 | 0.76%- 1.00%* |

\* Maximum Gross Margin for which CFC shall pay a premium is 3.00%.

Note: to the extent a government ARM loan contains Excess Spread for which a premium is paid pursuant to paragraph 10 above, no premium shall be paid for the corresponding amount of Excess Margin.

**Provision:**
Buyer shall have the option upon thirty (30) days notice to the Seller to change or rescind this provision relative to payment for Excess Margin on FHA and VA ARM loans.

12.     Delivery Deadlines/
        Window Period Deliveries:

Generally, the last day on which loans may be delivered in relation to particular trades ("Delivery Deadline") is as follows:

| Security | Business days prior to the applicable PSA Settlement Dates |
|----------|-----------------------------------------------------------|
| FNMA | 17 |
| FHLMC | 19 |
| GNMA I | 17 |
| GNMA II | approx. 24* |

\* See the Correspondent Lending Division's delivery schedule for deadlines applicable to specific settlement months, published monthly. In May: Final Delivery Date: 4/21/95, Pool Cutoff Date 4/26/95, PSA Settlement Date: 5/12/95.

For loans and associated Trades delivered after a Delivery Deadline, but before the end of the month, CFC shall increase the service release premium by the following amounts:
        30 YR Fixed Rate loans:   .20% (20 basis points)
        15 YR Fixed Rate loans:   .15% (15 basis points)

13.     Fees:

- A tax service fee will be charged as provided in the Correspondent Lending Division guide.
- A funding fee equal to $150 will be charged on each loan.
- The price paid for conventional loans on non-owner-occupied properties shall be reduced by 1.5% (150 basis points).

*ComUnity Terms Letter*
*Page 5*

April 14, 1,

14. **Maximum and Minimum Note Rates:**

The maximum note rate on each of the fixed rate mortgage loans delivered under this commitment ("Maximum Note Rate") shall be no greater than one percent (1%) above the coupon rate of the applicable Agency security trading closest to par (the "Applicable Coupon Rate").

The minimum note rate (the "Minimum Note Rate"), relating only to government ARM loans, which shall be deliverable hereunder shall be that rate which is .50% below the GNMA II security coupon trading closest to par in the settlement month corresponding to the month in which the Final Delivery Date occurs.

The Applicable Coupon Rate shall be the higher of the rate determined as of:
   i) the time the mortgage rates and points were committed to the borrower or,
   ii) the time the trade is assigned to CFC.

Should the note rate on the mortgage loans delivered exceed the Maximum Note Rate, then the servicing release premium shall be reduced by .50% (50 basis points) on any such loans.

If the note rate on a loan delivered to CFC is below the Minimum Note Rate, CFC may, at its option, purchase the loan; however, CFC shall not pay any premium for Excess Margin.

15. **Loan Characteristics:**

- Minimum average loan balance (calculated on a monthly basis):
   - Conv.   $ 110,000
   - Govt.   $ 120,000

- Geography:

   Loans on properties in any state within the continental United States may be delivered, subject to the following monthly volume limitations, expressed as a maximum percentage of the total monthly UPB delivery:

   | State | Max. Monthly Delivery |
   |---|---|
   | UT | 10% |
   | CT, MA, ME, MN, NH, NY, OR, RI, UT | 5% in aggregate |

- No subsidized loans (e.g. 235's, 265's, 203K's) or HUD REO loans may be delivered hereunder.

- No more than 5% of loans delivered may be buydown loans.

*ComUnity Terms Letter*
*Page 6*

April 14, 1995

- No more than 60% of government loans delivered ma... VA loans.

- No more than 50% of government loans delivered may by ARM loans.

- No more than 3% of the loans may be on properties with 2 to 4 units.

- All loans must be less than 3 months seasoned at time of delivery.

- No more than 15% of the loans delivered may be on Condominium properties.

- No more than 10% of the conventional loans delivered may have LTV ratios greater than 90%.

- No more than 5% of the loans may be secured by non-owner occupied properties.

- A minimum of 40% of the loans delivered will be from the Seller's retail production.

16.   Termination                Either party shall have the right to terminate this agreement on thirty days prior written notice to the other party.

17.   Expiration                 Unless accepted earlier, this offer shall expire on April 21, 1995.

The transaction contemplated herein will be subject to the execution of a mutually acceptable flow purchase and sale agreement, the satisfactory completion of a due diligence review of ComUnity by CFC and CFC's review of ComUnity's financial condition.

If the terms highlighted above are acceptable to ComUnity, please acknowledge below and return an executed copy of this term letter back to us.

We look forward to working with you on this transaction.

Sincerely,

Andrew Gissinger III
Senior Vice President

Countrywide Correspondent Lending Division
155 North Lake Avenue
Mail Stop 5-53
Pasadena, CA 91101

ComUnity Lending

By:   THONG   HONG

Title:   SENIOR   VICE PRESIDENT

Date:   APRIL   21   1995

**DIRECT TRADE ADDENDUM**
**EXHIBITS**


A.     Terms Sheet

B.     Delivery Notice

C.     Delivery Date Schedule

EXHIBIT B



## Countrywide
CORRESPONDENT LENDING

### DIRECT TRADE
### LOAN REGISTRATION SHEET

Instructions:  Complete and fax this list to the Management Control Department at (818) 304-4465.  CFC will complete the fields which contain an asterisk.

| INSTITUTION NAME & NO.: | TRADE NO.*: | AMOUNT OF TRADE: |
|---|---|---|
| | TOTAL NUMBER OF LOANS: | TOTAL DOLLAR AMOUNT OF LOANS: |

| CFC LOAN NUMBER* | LENDER LOAN NUMBER | BORROWER'S NAME | PROPERTY ADDRESS | STATE | ZIP CODE | UPB | VA? FHA? CONV? | LOAN PROGRAM (& ARM MARGIN) | NOTE RATE | TERM | IMP.? (Y/N) | OO? INVEST? 2ND? | LOAN PURPOSE (REFI OR PURCHASE?) | PROP TYPE | DOC TYPE | LTV | FNMA/ FHLMC | COUPON* |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |

| SECURITY TYPE*:_____ | | SECURITY TYPE*:_____ | | SECURITY TYPE*:_____ | | SECURITY TYPE*:_____ | | SECURITY TYPE*:_____ | |
|---|---|---|---|---|---|---|---|---|---|
| SETTLEMENT DATE*:_____ | | SETTLEMENT DATE*:_____ | | SETTLEMENT DATE*:_____ | | SETTLEMENT DATE*:_____ | | SETTLEMENT DATE*:_____ | |
| COUPON* | PRICE* | COUPON* | PRICE* | COUPON* | PRICE* | COUPON* | PRICE* | COUPON* | PRICE* |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

| DESK AUTHORIZATION*: | FILE DELIVERY DATE*: | LENDER CONTACT: | PHONE NUMBER: |
|---|---|---|---|
| PD-003EXH (6/17/94) | | | FAX NUMBER: |

Page 66 of 80    Part 2    Desc    Filed 05/06/08    Claim 22-1 Part 2    Case 08-50030

# EXHIBIT E

## DIRECT TRADE
## DELIVERY SCHEDULE

### CLASS A *SECURITIES

| SETTLEMENT MONTH | INVESTOR | FINAL DELIVERY DATE | POOL CUTOFF DATE | PSA SETTLEMENT DATE |
|---|---|---|---|---|
| MAY | FHLMC | 4/19/95 | 4/24/95 | 5/11/95 |
|  | FNMA | 4/21/95 | 4/26/95 | 5/11/95 |
| JUNE | FHLMC | 5/19/95 | 5/24/95 | 6/13/95 |
|  | FNMA | 5/23/95 | 5/26/95 | 6/13/95 |
| JULY | FHLMC | 6/22/95 | 6/27/95 | 7/17/95 |
|  |  | 6/26/95 | 6/29/95 | 7/17/95 |

* FNMA MBS and FHLMC PC Gold fixed rate 30-year securities
with coupons less than 9.50%.

# EXHIBIT E

## DIRECT TRADE
## DELIVERY SCHEDULE

### CLASS B * SECURITIES

| SETTLEMENT MONTH | INVESTOR | FINAL DELIVERY DATE | POOL CUTOFF DATE | PSA SETTLEMENT DATE FOR FNMA, FHLMC & GNMA I | POOL FUNDING DATE FOR GNMA II |
|---|---|---|---|---|---|
| MAY | FHLMC | 4/24/95 | 4/27/95 | 5/16/95 | |
| | FNMA | 4/26/95 | 5/01/95 | 5/16/95 | |
| | GNMA I | 4/26/95 | 5/01/95 | 5/16/95 | |
| | GNMA II Fx'd. | 4/21/95 | 4/26/95 | | 5/12/95 |
| JUNE | FHLMC | 5/23/95 | 5/26/95 | 6/15/95 | |
| | FNMA | 5/25/95 | 5/31/95 | 6/15/95 | |
| | GNMA I | 5/25/95 | 5/31/95 | 6/15/95 | |
| | GNMA II Fx'd. | 5/22/95 | 5/25/95 | | 6/13/95 |
| JULY | FHLMC | 6/26/95 | 6/29/95 | 7/19/95 | |
| | FNMA | 6/28/95 | 7/03/95 | 7/19/95 | |
| | GNMA I | 6/28/95 | 7/03/95 | 7/19/95 | |
| | GNMA II Fx'd. | 6/23/95 | 6/28/95 | | 7/17/95 |

\* GNMA II fixed rate 15- and 30-year MBS and FNMA MBS,
FHLMC PC Gold, and GNMA I 15-year securities.

## EXHIBIT E

## DIRECT TRADE
## DELIVERY SCHEDULE

## CLASS C * SECURITIES

| SETTLEMENT MONTH | INVESTOR | FINAL DELIVERY DATE | POOL CUTOFF DATE | PSA SETTLEMENT DATE |
|---|---|---|---|---|
| MAY | GNMA I | 4/27/95 | 5/02/95 | 5/17/95 |
| JUNE | GNMA I | 5/30/95 | 6/02/95 | 6/19/95 |
| JULY | GNMA I | 6/29/95 | 7/05/95 | 7/20/95 |

* GNMA I MBS fixed rate 30-year securities with coupons less than 9.50%.

# EXHIBIT E

## DIRECT TRADE
## DELIVERY SCHEDULE

### CLASS D * SECURITIES

| SETTLEMENT MONTH | INVESTOR | FINAL DELIVERY DATE | POOL CUTOFF DATE | PSA SETTLEMENT DATE |
|---|---|---|---|---|
| MAY | FHLMC | 4/26/95 | 5/01/95 | 5/18/95 |
|  | FNMA | 4/28/95 | 5/03/95 | 5/18/95 |
| JUNE | FHLMC | 5/30/95 | 6/02/95 | 6/21/95 |
|  | FNMA | 6/01/95 | 6/06/95 | 6/21/95 |
| JULY | FHLMC | 6/29/95 | 7/05/95 | 7/24/95 |
|  | FNMA | 7/03/95 | 7/07/95 | 7/24/95 |

\* FNMA MBS and FHLMC PC Gold fixed rate 30-year securities with coupons equal to or greater than 9.50%.

EXHIBIT E

DIRECT TRADE
DELIVERY SCHEDULE

CLASS E * SECURITIES

| SETTLEMENT MONTH | INVESTOR | FINAL DELIVERY DATE | POOL CUTOFF DATE | PSA SETTLEMENT DATE FOR GNMA I | POOL FUNDING DATE FOR GNMA II |
|---|---|---|---|---|---|
| MAY | GNMA I | 5/02/95 | 5/05/95 | 5/22/95 | |
| | GNMA II | 4/26/95 | 5/01/95 | | 5/18/95 |
| | ARMs | | | | |
| JUNE | GNMA I | 6/02/95 | 6/07/95 | 6/22/95 | |
| | GNMA II | 5/24/95 | 5/30/95 | | 6/20/95 |
| | ARMs | | | | |
| JULY | GNMA I | 7/05/95 | 7/10/95 | 7/25/95 | |
| | GNMA II | 6/23/95 | 6/28/95 | | 7/17/95 |

&ast;  GNMA I MBS fixed rate 30-year securities with coupons equal
to or greater than 9.50% and GNMA II ARM's.

## DIRECT TRADE PROGRAM ADDENDUM

This Addendum ("Direct Trade Addendum" or "Direct Trade Commitment") constitutes an addendum to that Loan Purchase Agreement (the "LPA") dated July 28, 1994, by and between Countrywide Funding Corporation ("CFC" or "Buyer"), a New York Corporation, and **ComUnity Lending** ("Seller"). This Direct Trade Addendum is for the purpose of setting forth the obligations of the Seller to CFC, related to Seller's delivery of loans to CFC under CFC's Direct Trade program, ("Direct Trade Program") which is further detailed in the Direct Trade Terms Sheet (the "Terms Sheet") attached hereto as Exhibit A, dated April 14, 1995. This Direct Trade Addendum shall modify, amend, and form a part of the terms of the LPA. All capitalized terms contained herein which are not defined shall have the same meaning as in the LPA. In the event of any conflict between the terms and conditions of the LPA and this Direct Trade Addendum as it pertains to delivery of loans under the Direct Trade Program, the terms and conditions of this Direct Trade Addendum shall prevail. All other provisions of the LPA shall remain unchanged and be in full force and effect.

## I.   COMMITMENT TO PURCHASE LOANS

Buyer hereby commits to purchase from Seller first lien mortgage loans during the term of this Commitment which are secured by residential properties falling within the product loan types, meeting the other criteria of, and delivered in accordance with, the terms and conditions set forth in this Direct Trade Addendum, the Direct Trade Terms Sheet, the LPA and the Guide ("Eligible Mortgage Loans").

## II.   DEFINITIONS

A.   "Associated Security" shall mean that mortgage backed security which CFC shall designate for each mortgage loan covered by a Direct Trade as provided in section IV herein.

B.   "Business Day" shall mean any day other than a Saturday, Sunday or a day on which commercial banks in Los Angeles, California are authorized or required by law or executive order to close.

C.   "Delivery" shall mean the delivery by Seller to CFC of a group of Eligible Mortgage Loans which are to be delivered by Seller to CFC to satisfy the Seller's delivery obligations in conjunction with a Direct Trade.

D.   "Delivery Notice" shall mean the form attached to this Direct Trade Addendum as Exhibit B, representing Seller's notification to Buyer of a Delivery to be made under this Direct Trade Addendum.

E.   "Direct Trade" shall mean a mandatory commitment entered into directly between CFC and Seller whereby Seller agrees to sell and CFC agrees to purchase a specific group of Eligible Mortgage Loans at a specific purchase price, and which further provides that all such Eligible Mortgage Loans are to be delivered by Seller to CFC on or prior to the Mandatory File Receipt Date.

F.   "Direct Trade Date" shall mean the date that a Direct Trade was entered into between CFC and Seller.

G.   "Eligible Mortgage Loans" shall mean Mortgage Loans which are eligible for pooling into their designated Associated Security and that meet all of the criteria specified herein, the Terms Sheet, the LPA and the Guide.

H.   "FHA" shall mean the Federal Housing Administration.

I.   "FHLMC" shall mean the Federal Home Loan Mortgage Corporation.

J.   "Final Delivery Date" shall mean the applicable dates reflected in the column entitled "Final Delivery Date" set forth in Exhibit C attached to this Direct Trade Addendum.

K.   "FHLMC P.C." shall mean a mortgage-backed instrument guaranteed by FHLMC that evidences an ownership interest in a pool of Mortgage Loans.

2

**L.** "FNMA" shall mean the Federal National Mortgage Association.

**M.** "FNMA MBS" shall mean a mortgage-backed security guaranteed by FNMA and representing an ownership interest in a pool of Mortgage Loans.

**N.** "GNMA" shall mean the Government National Mortgage Association.

**O.** "Guide" shall mean CFC's Correspondent Lending Division Loan Purchase Program Seller's Manual.

**P.** "Mandatory File Receipt Date" shall mean that date which is five business days subsequent to the Direct Trade Date.

**Q.** "Minimum Delivery Amount" shall mean the minimum aggregate principal balance of the Eligible Mortgage Loans to be covered by a specific Direct Trade.

**R.** "Mortgage Loan" shall mean an obligation evidenced by a promissory note secured by a first lien upon a residential property and the servicing rights, titles and interests therein and thereto, together with the Mortgage Loan File, escrow accounts and all records pertaining to such loan.

**S.** "Mortgage Loan Files" shall mean all of those documents required to have been obtained or produced pursuant to the Guide, this Direct Trade Addendum and the requirements of FHLMC, FNMA, FHA or VA as applicable.

**T.** "Mortgage Loan Purchase Price" shall have the meaning set forth in Section IV of this Direct Trade Addendum.

**U.** "Pool Cut-Off Date" shall mean the applicable date reflected in the column entitled "Pool Cut-Off Date" set forth in Exhibit C attached to this Direct Trade Addendum.

**V.** "Purchase Date" shall mean the actual date that Buyer pays the Purchase Price for each Eligible Mortgage Loan following the Receipt Date for such Eligible Mortgage Loan.

**W.** "Purchase Voucher" shall mean the Correspondent Lending Division Purchase Voucher as described in the Guide.

**X.** "Receipt Date" shall mean the date of receipt by Buyer of a complete Mortgage Loan File for each Eligible Mortgage Loan.

**Y.** "Rejected Loan" shall have the meaning specified in Section VIII.A. of this Direct Trade Addendum.

**Z.** "Settlement Date" shall mean the applicable date reflected in the column entitled "Settlement Date" set forth on Exhibit C attached to this Direct Trade Addendum.

**AA.** "Shortfall Amount" shall mean the amount by which the Delivery amount is less than the Minimum Delivery Amount.

**BB.** "Suspension Cure Date" shall mean that date which is the earlier of the "Pool Cutoff Date" or that date which is five (5) calendar days subsequent to the date CFC gives Seller notice that a loan delivered by Seller to CFC contains a suspense making the loan not eligible for purchase by CFC hereunder.

**CC.** "Tolerance" shall mean 5.00% of the applicable loan amount for which Seller has substituted an Eligible Mortgage Loan.

**DD.** "VA" shall mean the Veterans Administration.

3

III.    **DIRECT TRADES AND DELIVERIES**

Seller agrees to enter into Direct Trades and make corresponding Deliveries of Eligible Mortgage Loans during each month during the term of this Direct Trade Commitment, which Direct Trades and related Deliveries shall comply with the following provisions:

A.    The aggregate principle balance of each Direct Trade and corresponding Delivery shall not be less than the Minimum Delivery Amount.

B.    Prior to entering into a Direct Trade, Seller shall send to CFC via telefax a Delivery Notice describing the Eligible Mortgage Loans comprising the Delivery which is the subject of the Direct Trade.

C.    The complete Mortgage Loan File on each of the Eligible Mortgage Loans which comprise a Delivery and which are the subject of a Direct Trade shall be delivered to, and received by CFC no later than the Mandatory File Receipt Date.

D.    Each Eligible Mortgage Loan delivered in conjunction with a Direct Trade shall qualify in every respect for inclusion in the Associated Security designated for such loan as discussed in Section IV. herein

E.    CFC's obligation to purchase an Eligible Mortgage Loan shall be contingent on (1) Seller's concurrent delivery to Buyer of complete Mortgage Loan Files on all of the Eligible Mortgage Loans comprising the Delivery by the Mandatory File Receipt Date, and (2) CFC's review and acceptance of the Mortgage Loan File, which acceptance shall be evidenced by Buyer's payment to Seller of the Mortgage Loan Purchase Price for such Eligible Mortgage Loan as set forth in section IV. below; provided however that such review and acceptance shall not in any way diminish Seller's obligations, representations or warranties, or Buyer's rights, under this Direct Trade Addendum or the LPA.

F.    Seller agrees to deliver to Buyer under the combined AOT and Direct Trade Programs an aggregate minimum amount of $5 Million ($5,000,000) and a maximum amount of $15 Million ($15,000,000) in Deliveries during each calendar month during the term of this Agreement. Should Seller desire to deliver in excess of $15 Million ($15,000,000) in Deliveries in any one month, such excess Deliveries shall require the prior written approval of Buyer. Seller further agrees to not deliver more than 10% of the total monthly delivery volume for purchase on any one business day.

IV.    **PURCHASE PRICE/SERVICING RELEASED PREMIUM**

A.    The purchase price (the "Mortgage Loan Purchase Price") to be paid by CFC on each Eligible Mortgage Loan delivered which is covered by a Direct Trade will be equal to the product of (x) the unpaid principal balance of such Eligible Mortgage Loan on the Purchase Date, multiplied by (y) the percentage price ("Purchase Price Percentage") offered by CFC to Seller, and accepted by Seller for such Eligible Mortgage Loan at the time the Direct Trade was entered into.

1.    The Purchase Price Percentage which CFC shall offer for each Eligible Mortgage Loan shall be equal to the bid price which CFC believes it can obtain at the time of the Direct Trade for the forward sale of the Applicable Security (defined below) designated by CFC for each such Eligible Mortgage Loan.

2.    The "Applicable Security" designated by CFC for each Eligible Mortgage Loan shall be that mortgage backed security with the highest coupon rate of interest into which the Eligible Mortgage Loan can be pooled into by CFC. The coupon rate of interest of the Applicable Security (the "Applicable Security Coupon Rate") shall be in even .50% increments.

3.    The Applicable Security shall be either a FNMA MBS or FHLMC PC Gold security for conventional fixed rate loans, a GNMA I security for fixed rate FHA and VA loans, and a GNMA II security for FHA or VA adjustable rate loans.

4

4. The Issue Date and related PSA settlement date of the Applicable Security shall be determined by reference to the Mandatory File Receipt Date applicable to the Direct Trade and the Final Delivery Dates specified in Exhibit C attached hereto.

5. Notwithstanding the preceding, if any Eligible Mortgage Loan can be pooled into either a FNMA MBS security or a FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types CFC is to designate as the Applicable Security.

B. The Mortgage Loan Purchase Price shall be further adjusted by any Buyup or Buydown fees, impound balances, accrued interest and other adjustments or fees as provided for in the Terms Sheet or the Guide.

C. In addition to the payment of the Mortgage Loan Purchase Price, net of adjustments as provided for in paragraphs IV.A. and IV.B. above, CFC shall pay Seller a servicing released premium ("Servicing Released Premium") on each Eligible Mortgage Loan purchased which shall be calculated by multiplying the unpaid principal balance of such Eligible Mortgage Loan on the Purchase Date by the applicable Servicing Released Premium percentage provided for in the Terms Sheet.

## V.   LOAN CHARACTERISTICS

Seller represents that the characteristics of all Eligible Mortgage Loans to be delivered by Seller hereunder shall fully conform to the required characteristics and parameters set forth in this Addendum, the Terms Sheet and the Guide.

## VI.   UNDERWRITING

Each Loan purchased pursuant to the Direct Trade Program shall be underwritten by Seller in accordance with the underwriting guidelines and the lending requirements set forth in the Guide, the regulations of FHLMC, FNMA, FHA or VA, as applicable, and the guidelines of any applicable mortgage insurance companies. Seller shall be responsible for ensuring that Eligible Mortgage Loans submitted to Buyer comply with all terms and conditions of this Direct Trade Addendum and the aforementioned regulations and guidelines. Conventional Mortgage Loans that do not conform to the standard program parameters or underwriting guidelines of FNMA or FHLMC, but for which Seller received a waiver from FNMA or FHLMC, as applicable may not be delivered hereunder unless Seller has obtained the prior written consent of Buyer prior to the delivery of such loans to Buyer.

Buyer shall have the right, but not the obligation, to underwrite any Eligible Mortgage Loan submitted for purchase pursuant to this Direct Trade Addendum, the LPA and the Guide or otherwise ensure that any Eligible Mortgage Loan submitted for purchase complies with all of the terms and conditions of this Direct Trade Addendum, the LPA and the Guide; provided that the existence of this right shall not affect in any way Seller's obligations hereunder, including without limitation, Seller's repurchase obligations, and Seller's hold harmless obligations under the LPA.

## VII.   TIMING OF DELIVERIES/PAIR OFF FEES

Seller agrees to deliver all Eligible Mortgage Loans to CFC on or before the Mandatory File Receipt Date.

In the event that Seller fails to deliver an Eligible Mortgage Loan applicable to a Direct Trade by the related Mandatory File Receipt Date established for that Direct Trade, Seller shall pay CFC a mark to market pair-off fee (the "Pair-Off Fee") which shall be calculated by multiplying the principal balance of the Eligible Mortgage Loan(s) not delivered by a percentage equal to the sum of the following:

1. An administrative fee equal to the greater of 0.125% of the Shortfall Amount or $100; plus

2. The positive difference, if any, between (x) the bid price (expressed as a percent) obtainable by CFC on Mandatory File Receipt Date for the Associated Security which was designated for the

5

Eligible Mortgage Loan, and (y) the price offered by CFC, and accepted by Seller for such non-delivered loan pursuant to the Direct Trade.

**VIII.    REJECTION OF MORTGAGE LOANS**

**A.**    In the event Seller delivers a mortgage loan on or prior to the Mandatory File Receipt Date and Buyer rejects such mortgage loan (a "Rejected Loan") because any of the documentation relating to such loan, or Seller, as applicable fails to satisfy or breaches any of the criteria, requirements, representations or warranties set forth in this Direct Trade Addendum, the Term Sheet, the LPA or the Guide, then Seller shall have the right to cure the deficiency giving rise to the rejection or to substitute an Eligible Mortgage Loan, provided that such cure is completed, and in the case of a substituted loan, the Eligible Mortgage Loan is delivered, reviewed and accepted by Buyer prior to the Suspension Cure Date.

**B.**    In the event Seller fails to cure the reason giving rise to a Rejected Loan prior to the Suspension Cure Date, or to substitute an acceptable Eligible Mortgage Loan which is reviewed and accepted by the Suspension Cure Date, the Buyer at its sole option may send such Rejected Loan back to Seller or allow Seller additional time to cure the reason giving rise to the rejection. In any event, Seller shall pay Buyer immediately upon receipt of notice from Buyer:

**1.**    The Administrative fee, plus:

**2.**    the amount of any pair-off loss if a Rejected Loan is sent back to Seller and no substitute Eligible Mortgage Loan is received and accepted by Buyer prior to the applicable Suspension Cure Date.  Such pair-off loss will be calculated by multiplying the unpaid principal balance of the Rejected Loan by the positive difference, if any, between (a) the bid price (expressed as a percentage) obtainable by CFC for the related Associated Security on the date the Rejected Loan is sent back to Seller, and (b) the price offered by CFC and accepted by Seller for such Rejected Loan,  pursuant to the Direct Trade, plus;

**3.**    An interest fee calculated at the Applicable Security Coupon Rate associated with the Rejected Loan and multiplied by the aggregate unpaid principal balance of such Rejected Loan for the number of days between the Suspension Cure Date and either the date of the pair-off or the date that a substitute Eligible Mortgage Loan submitted to and accepted by Buyer for purchase is purchased.

**IX.    REPURCHASE OF MORTGAGE LOANS**

**A.**    In the event that Buyer, FNMA, FHLMC, FHA or VA as applicable, reject a Mortgage Loan prior to the date such loan is sold to them or pooled into a mortgage backed security, and Buyer has purchased the rejected Mortgage Loan from Seller, then Seller shall repurchase such Mortgage Loan, and Buyer shall have all other remedies as set forth in the LPA.  In addition, Seller shall pay Buyer the applicable amounts calculated pursuant to Paragraph VIIIB above.

**B.**    In each of the cases set forth in Paragraphs VIIIA, VIIIB and IX.A above, Seller shall also indemnify and hold Buyer harmless from and against all costs, expenses and other charges incurred by the Buyer as provided for in the LPA and Guide.

**X.    COMMITMENT PERIOD**

The term of this Direct Trade Addendum will extend from April 20, 1995, to October 31, 1995, and on October 31, 1995, this Direct Trade Addendum shall terminate; however, this Direct Trade Addendum may be extended by the written consent of both Buyer and Seller.

**XI.    TERMINATION**

In addition to the termination provision set forth in Section IX above, this Direct Trade Addendum may be terminated by the mutual consent of Buyer and Seller or upon the giving of 30 days notice by either party

6

to the other.  Notice shall be effective (i) when received, (ii) four (4) days after being sent by certified or registered U.S. Mail, (iii) or two (2) days after being delivered by an overnight courier. Should Seller breach any of the terms or conditions of this Direct Trade Addendum, the LPA, the Terms Sheet, or the Guide, Buyer may terminate this Direct Trade Addendum immediately without notice to Seller. Termination of this Direct Trade Addendum shall not in any way affect either Seller's or Buyer's obligations, representations, warranties or indemnifications with respect to Eligible Mortgage Loans already purchased by, or Direct Trades already entered into by Seller and Buyer; provided, however, that Buyer may immediately terminate its obligations hereunder without notice and immediately cancel any unfilled Direct Trades and/or return any Eligible Mortgage Loans not purchased back to Seller, and Seller shall accept such re-assignment or return, as applicable, if Buyer reasonably determines that there has been any non-performance, deception, fraud, concealment or material misrepresentation by Seller in performing any of its duties, obligations, responsibilities or actions undertaken in connection with this Direct Trade Addendum including but not limited to Seller's:

    (i)      origination or servicing of the Eligible Mortgage Loans;

    (ii)     delivery of any Eligible Mortgage Loan to Buyer;

    (iii)    making of any representation or warranty;

    (iv)    performance of its repurchase obligations;

    (v)     adjudication as a bankrupt, insolvency or application for or consent to the appointment of a receiver, trustee, liquidator, custodian or similar official for itself or any of its properties or assets;

    (vi)    assignment or attempt to assign any of its rights or obligations under this Direct Trade Addendum without the prior written consent of Buyer;

    (vii)   breach any of its obligations under this Direct Trade Addendum;

    (viii)  failure to be a qualified originator of Eligible Mortgage Loans in any jurisdiction where mortgaged property securing any Eligible Mortgage Loan is located.

In such event, Buyer shall be entitled to avail itself of all remedies as set forth in the Direct Trade Addendum, the LPA and the Guide.

Additionally, Buyer may terminate this Direct Trade Addendum with thirty (30) days written notice to Seller should any Federal or State law be enacted which adversely affects the value of the servicing rights being acquired, including, but not limited to, changes in law impacting interest on escrow balance requirements.

**XII.**    **FINANCIAL STATEMENTS**

Seller shall provide Buyer with interim financial statements and other information at least quarterly within sixty (60) days following the end of each quarter.  Seller shall provide audited financial statements certified by an independent certified public accountant within one hundred (100) days following the end of Seller's fiscal year.

**XIII.**   **RIGHT OF OFFSET AND DELIVERY OF PAYMENTS**

    A.    In addition to any rights now or hereafter granted under this Direct Trade Addendum, the LPA or Guide by applicable law or otherwise, and not by way of limitation of any such rights, Buyer is hereby authorized at any time or from time to time, without presentment, demand, protest or other notice of any kind to Seller or to any other person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all amounts at any time owing by Buyer to or for the credit or the account of Seller against and on account of the obligations and liabilities of Seller to Buyer under this Direct Trade Addendum, irrespective of whether or not Buyer shall have made any demand therefor.

7

**B.** Except as expressly otherwise set forth in this Direct Trade Addendum, the LPA or Guide, any amounts due from Seller to Buyer pursuant to any provision of this Direct Trade Addendum, the LPA or Guide shall be remitted by Seller to Buyer no later than five (5) Business Days from Seller's receipt of notice from Buyer of the amounts due hereunder.

## XIV.   EXHIBITS

All exhibits attached hereto or referred to in this Direct Trade Addendum are incorporated by reference into this Direct Trade Addendum and made a part hereof.

## XV.   ASSIGNMENT

Seller may not assign its rights or obligations under this Direct Trade Addendum without the prior written consent of Buyer. This Direct Trade Addendum shall be binding and inure to the benefit of Buyer's successors and assigns.

**Countrywide Funding Corporation**

By: Andrew Gissinger III
Senior Vice President

Date: April 20, 1995

**ComUnity Lending**

By: THONG HONG

Date: APRIL 21, 1995

## ASSIGNMENT OF TRADE ADDENDUM

This Addendum ("AOT Addendum") constitutes an addendum to that Loan Purchase Agreement (the "LPA") dated July 28, 1994, by and between Countrywide Funding Corporation ("CFC" or "Buyer"), a New York Corporation, and **ComUnity Lending** ("Seller"). This AOT Addendum is for the purpose of setting forth the obligations of the Seller to CFC, related to Seller's delivery of loans to CFC under CFC's Assignment of Trade program, ("AOT Program") which is further detailed in the Assignment of Trade Terms Sheet ("AOT Terms Sheet") attached hereto as Exhibit A, dated April 14, 1995. This AOT Addendum shall modify, amend, and form a part of the terms of the LPA. All capitalized terms contained herein which are not defined shall have the same meaning as in the LPA. In the event of any conflict between the terms and conditions of the LPA and this AOT Addendum as it pertains to delivery of loans under the AOT Program, the terms and conditions of this AOT Addendum shall prevail. All other provisions of the LPA shall remain unchanged and be in full force and effect.

I.   **COMMITMENT TO PURCHASE LOANS AND ACCEPTANCE OF ASSIGNMENTS OF TRADE.**

Buyer hereby commits to purchase from Seller first lien mortgage loans secured by residential properties (the "Mortgage Loans") falling within the product loan types, meeting the other criteria of, and delivered in accordance with, the terms and conditions set forth in this AOT Addendum, the AOT Terms Sheet, the LPA and the Guide. CFC also commits to accept from Seller assignments of Trade, subject to all of the terms and conditions set forth in this AOT Addendum.

II.  **DEFINITIONS.**

A.   "Approved Investor" shall mean a securities dealer listed on Exhibit B attached to this AOT Addendum (which list may be revised by Buyer from time to time) or a securities dealer otherwise approved by Buyer in writing, which approval may be withheld in Buyer's sole discretion.

B.   "Assignment Notification" shall mean a form of assignment of a Trade fully completed and executed by Seller substantially in the form of Exhibit C attached to this AOT Addendum.

C.   "Business Day" shall mean any day other than a Saturday, Sunday or a day on which commercial banks in Los Angeles, California are authorized or required by law or executive order to close.

D.   "Delivery" shall have the meaning set forth in Section III.A. of this AOT Addendum.

E.   "Delivery Date Schedule" shall mean the schedule attached to this AOT Addendum as Exhibit E.

F.   "Delivery Notice" shall mean the form attached to this AOT Addendum as Exhibit D, representing Seller's notification to Buyer of a Delivery to be made under this AOT Addendum.

G.   "Eligible Mortgage Loans" shall have the meaning specified in Section III.A. of this AOT Addendum.

H.   "FHA" shall mean the Federal Housing Administration.

I.   "FHLMC" shall mean the Federal Home Loan Mortgage Corporation.

J.   "Final Delivery Date" shall mean the applicable dates reflected in the column entitled "Final Delivery Date" set forth in Exhibit E attached to this AOT Addendum.

K.   "FHLMC P.C." shall mean a mortgage-backed instrument guaranteed by FHLMC that evidences an ownership interest in a pool of Mortgage Loans.

L.   "FNMA" shall mean the Federal National Mortgage Association.

2

M.   "FNMA MBS" shall mean a mortgage-backed security guaranteed by FNMA and representing an ownership interest in a pool of Mortgage Loans.

N.   "GNMA" shall mean the Government National Mortgage Association.

O.   "Guide" shall mean CFC's Correspondent Lending Division Loan Purchase Program Seller's Manual.

P.   "Minimum Delivery Amount" shall mean the minimum aggregate principal balance of the Eligible Mortgage Loans to be covered by a specific Trade, plus or minus the Tolerance.

Q.   "Mortgage Loan" shall mean an obligation evidenced by a promissory note secured by a first lien upon a residential property and the servicing rights, titles and interests therein and thereto, together with the Mortgage Loan File, escrow accounts and all records pertaining to such loan.

R.   "Mortgage Loan Files" shall mean all of those documents required to have been obtained or produced pursuant to the Guide and the requirements of FHLMC, FNMA, FHA or VA as applicable.

S.   "Mortgage Loan Purchase Price" shall have the meaning set forth in Section V of this AOT Addendum.

T.   "Pool Cut-Off Date" shall mean the applicable date reflected in the column entitled "Pool Cut-Off Date" set forth in Exhibit E attached to this AOT Addendum.

U.   "Purchase Date" shall mean the actual date that Buyer pays the Purchase Price for each Eligible Mortgage Loan following the Receipt Date for such Eligible Mortgage Loan.

V.   "Purchase Voucher" shall mean the Correspondent Lending Division Purchase Voucher as described in the Guide.

W.   "Receipt Date" shall mean the date of receipt by Buyer of a complete Mortgage Loan File for each Eligible Mortgage Loan.

X.   "Rejected Loan" shall have the meaning specified in Section IX.A. of this AOT Addendum.

Y.   "Settlement Date" shall mean the applicable date reflected in the column entitled "Settlement Date" set forth on Exhibit E attached to this AOT Addendum.

Z.   "Tolerance" shall mean 2.00% of the applicable Trade amount or such other amount as specified by the Public Securities Association ("PSA").

AA.   "Shortfall Amount" shall mean the amount by which the Delivery Amount is less than the Minimum Delivery Amount.

BB.   "Trade" shall mean an obligation to deliver a Mortgage-Backed Security or a Participation Certificate to an Approved Investor at a particular Trade Price on the Settlement Date for such Trade.

CC.   "Trade Price" shall mean the negotiated price with an Approved Investor for the delivery of a mortgage-backed security or a participation certificate.

DD.   "VA" shall mean the Veterans Administration.

III.  **MORTGAGE LOAN DELIVERIES.**

    A.    Seller shall deliver from time to time to Buyer under the terms of this AOT Addendum Mortgage Loans for purchase that are eligible for pooling into the mortgage-backed securities which are the subject of a corresponding Trade and that meet all other criteria specified herein and in the AOT Terms Sheet, the LPA and the Guide ("Eligible Mortgage Loans"). The aggregate unpaid principal balance of Eligible Mortgage Loans delivered by Seller to Buyer from time to time in conjunction with the assignment of a particular Trade (a "Delivery") shall meet the following criteria:

        1.    The aggregate unpaid principal balance of each Delivery shall be equal to the face amount of the corresponding Trade to be assigned by Seller to Buyer in conjunction with the Delivery plus or minus the Tolerance; and

        2.    The aggregate unpaid principal balance of each Delivery shall, in no event, be less than $1,000,000 for Deliveries relating to Trades of FNMA MBS, FHLMC PC Gold, and GNMA I securities and $500,000 for Deliveries relating to Trades of GNMA II securities.

    B.    All Eligible Mortgage Loans comprising a Delivery associated with a particular Trade shall qualify in every respect for inclusion in the security covered by the applicable Trade. Buyer shall have full discretion as to whether to retain or sell any Eligible Mortgage Loan or to use any Eligible Mortgage Loan to fill the corresponding Trade.

    C.    Buyer's obligation to purchase an Eligible Mortgage Loan shall be contingent on (1) Seller's concurrent delivery to Buyer of (a) evidence of the corresponding Trade and (b) all other Eligible Mortgage Loans comprising the Delivery, the aggregate principal balances of which, together with the subject Eligible Mortgage Loan, correspond to the dollar amount of the corresponding Trade as provided in Section III.A. above and in Section IV hereof, (2) the assignment of the applicable Trade by Seller to Buyer and the acceptance of such assignment by Buyer as evidenced by the execution of the Assignment Notification by Seller, Buyer and the Approved Investor and (3) Buyer's review and acceptance of the Mortgage Loan File, which acceptance shall be evidenced by Buyer's payment to Seller of the Purchase Price for such Mortgage Loans as set forth in Section V below; provided, however, that such review and acceptance shall not in any way diminish Seller's obligations, representations or warranties, or Buyer's rights, under this AOT Addendum or the LPA.

    D.    Seller agrees to deliver to Buyer under the combined AOT and Direct Trade Programs an aggregate minimum amount of $5 Million ($5,000,000) and a maximum amount of $15 Million ($15,000,000) in Deliveries during each calendar month during the term of this AOT Addendum. Should Seller desire to deliver in excess of $15 Million ($15,000,000) in Deliveries in any one month, such excess Deliveries shall require the prior written approval of Buyer. Seller further agrees to not deliver more than 10% of the total monthly delivery volume for purchase on any one Business Day provided, however, that if such 10% amount is less than $1 million, Seller may deliver up to $1 Million in Eligible Mortgage Loans per Business Day.

    E.    Seller shall send to Buyer the Delivery Notice via telefax at least one Business Day in advance of the day Seller intends to deliver the Eligible Mortgage Loans comprising the Delivery. A complete Mortgage Loan File containing each of the documents required pursuant to the Guide shall be delivered for each Eligible Mortgage Loan. The Mortgage Loan Files shall be accompanied by a fully completed copy of the Purchase Voucher for each of the Mortgage Loans to be purchased. On the same day the Delivery Notice is received by Buyer, Seller shall send, by overnight mail, the complete Mortgage Loan Files and the original notes, with bailee letters from Seller's warehouse bank attached, if applicable, and wiring instructions such that Buyer receives them on the first Business Day following such telefax notification.

4

IV.    **COMMITMENT TO ACCEPT ASSIGNMENTS OF TRADE.**

Buyer hereby commits to accept assignments of Trades from Seller in conjunction with Deliveries to be made by Seller hereunder under the following terms and conditions:

A.    The Trade must have been issued by and subject to closing with an Approved Investor; the Trade must be for the forward sale of an eligible security as specified in the AOT Terms Sheet; and the Trade must be for a face amount of no less than $1,000,000 for trades covering FNMA MBS, FHLMC PC Gold and GNMA I securities, and $500,000 for Trades covering GNMA II securities. Seller shall negotiate the Trade Price with the Approved Investor, thereby assuming any market gain or loss with regard to the Eligible Mortgage Loans associated with the Trade.

B.    Buyer's obligation to accept assignment of the Trade is contingent upon Buyer having received from Seller all of the Eligible Mortgage Loans necessary to form the security covered by the Trade on or prior to the Final Delivery Date.  Each of the Mortgage Loans shall be fully eligible for inclusion within the security covered by the Trade, and the aggregate of the unpaid principal balances of such Eligible Mortgage Loans received by Buyer in the Delivery associated with the Trade shall be not less nor more than the face amount of the Trade, plus or minus the Tolerance.

C.    On the Delivery Notice, Seller shall provide to Buyer written notice of the Trade Seller intends to assign to Buyer.  Such notice shall identify the Trade with particularity and the Eligible Mortgage Loans to be delivered which are eligible for inclusion within the security covered by the Trade, as aforementioned.

D.    The assignment of the Trade shall be effectuated, at Buyer's option, either by assignment of the Trade pursuant to the form attached hereto as Exhibit C or by the cancellation through the applicable Approved Investor of the Trade in Seller's name and the reissuance of the Trade in the name of Buyer or by such other means as Buyer shall reasonably require.

E.    Notwithstanding any assumption or acceptance of a Trade by Buyer, Seller hereby acknowledges, understands and agrees that Buyer shall have no obligation to deliver all or any of the Eligible Mortgage Loans being purchased hereunder against any Trade assumed by Buyer and that Buyer will be free to pair off the Trade being assumed, to reassign the Trade to a third party, to fully cancel the Trade or to make any other disposition of the Trade that Buyer, in its sole discretion, shall determine.

V.    **PURCHASE PRICE, ADJUSTMENTS AND SERVICING RELEASED PREMIUMS**

A.    Buyer shall purchase each Eligible Mortgage Loan delivered for sale by Seller to Buyer pursuant to the AOT Program for a purchase price (the "Mortgage Loan Purchase Price") which shall be calculated by multiplying the unpaid principal balance of the applicable Eligible Mortgage Loan by the percentage which is equal to the Trade Price (expressed as a percentage of par) on the Trade associated with the Delivery in which the Eligible Mortgage Loan is included. Additionally, the Mortgage Loan Purchase Price shall be adjusted by any buyup or buydown fees, impound balances, accrued interest, and other adjustments or fees provided for in the AOT Terms Sheet or the Guide.

B.    Additionally, Buyer shall pay Seller a servicing released premium ("Servicing Released Premium") on each Eligible Mortgage Loan purchased, which shall be calculated by multiplying the unpaid principle balance of such Eligible Mortgage Loan by the applicable Servicing Released Premium percentage provided for in the AOT Terms Sheet.

C.    Buyer shall use its best efforts to pay the Mortgage Loan Purchase Price and Servicing Released Premium with respect to each Eligible Mortgage Loan within five (5) Business Days following the Receipt Date (the actual date of purchase being the "Purchase Date").

5

**VI.**   **LOAN CHARACTERISTICS.**

    Seller represents that the characteristics of all Eligible Mortgage Loans to be delivered by Seller hereunder shall fully conform to the required characteristics set forth in this AOT Addendum, the AOT Terms Sheet and the Guide.

**VII.**   **UNDERWRITING.**

    Each Loan purchased pursuant to the AOT Program shall be underwritten by Seller in accordance with the underwriting guidelines and the lending requirements set forth in the Guide, the regulations of FHLMC, FNMA, FHA or VA, as applicable, and the guidelines of any applicable mortgage insurance companies.  Seller shall be responsible for ensuring that Eligible Mortgage Loans submitted to Buyer comply with all terms and conditions of this AOT Addendum and the aforementioned regulations and guidelines.  Conventional Mortgage Loans that do not conform to the standard program parameters or underwriting guidelines of FNMA or FHLMC, but for which Seller received a waiver from FNMA or FHLMC, as applicable may not be delivered hereunder unless Seller has obtained the prior written consent of Buyer prior to the delivery of such loans to Buyer.

    Buyer shall have the right, but not the obligation, to underwrite any Eligible Mortgage Loan submitted for purchase pursuant to this AOT Addendum, the LPA and the Guide or otherwise ensure that any Eligible Mortgage Loan submitted for purchase complies with all of the terms and conditions of this AOT Addendum, the LPA and the Guide; provided that the existence of this right shall not affect in any way Seller's obligations hereunder, including without limitation, Seller's repurchase obligations, and Seller's hold harmless obligations under the LPA.

**VIII.**   **TIMING OF DELIVERIES/PAIR OFF FEES**

    Seller agrees to deliver all Eligible Mortgage Loans associated with a particular Trade on or before the applicable Final Delivery Date related to that Trade.  Exhibit E may be modified from time to time by Buyer in its sole and absolute discretion.

    In the event that Seller fails to deliver an Eligible Mortgage Loan applicable to a Direct Trade by the related Mandatory File Receipt Date established for that Direct Trade, Seller shall pay CFC a mark to market pair-off fee (the "Pair-Off Fee") which shall be calculated by multiplying the principal balance of the Eligible Mortgage Loan(s) not delivered by a percentage equal to the sum of the following:

1.    An administrative fee equal to the greater of 0.125% of the Shortfall Amount or $100; plus

2.    The positive difference, if any, between (x) the bid price (expressed as a percent) obtainable by CFC on Mandatory File Receipt Date for the Associated Security which was designated for the Eligible Mortgage Loan, and (y) the price offered by CFC, and accepted by Seller for such non-delivered loan pursuant to the Direct Trade.

**IX.**   **REJECTION OF MORTGAGE LOANS**

    **A.**    In the event Seller delivers a mortgage loan on or prior to the Mandatory File Receipt Date and Buyer rejects such mortgage loan (a "Rejected Loan") because any of the documentation relating to such loan, or Seller, as applicable fails to satisfy or breaches any of the criteria, requirements, representations or warranties set forth in this Direct Trade Addendum, the Term Sheet, the LPA or the Guide, then Seller shall have the right to cure the deficiency giving rise to the rejection or to substitute an Eligible Mortgage Loan, provided that such cure is completed, and in the case of a substituted loan, the Eligible Mortgage Loan is delivered, reviewed and accepted by Buyer prior to the Suspension Cure Date.

    **B.**    In the event Seller fails to cure the reason giving rise to a Rejected Loan prior to the Suspension Cure Date, or to substitute an acceptable Eligible Mortgage Loan which is reviewed and accepted by the Suspension Cure Date, the Buyer at its sole option may send such

6

Rejected Loan back to Seller or allow Seller additional time to cure the reason giving rise to the rejection.  In any event, Seller shall pay Buyer immediately upon receipt of notice from Buyer:

1.     The Administrative fee, plus:

2.     the amount of any pair-off loss if a Rejected Loan is sent back to Seller and no substitute Eligible Mortgage Loan is received and accepted by Buyer prior to the applicable Suspension Cure Date.  Such pair-off loss will be calculated by multiplying the unpaid principal balance of the Rejected Loan by the positive difference, if any, between (a) the bid price (expressed as a percentage) obtainable by CFC for the related Associated Security on the date the Rejected Loan is sent back to Seller, and (b) the price offered by CFC and accepted by Seller for such Rejected Loan,  pursuant to the Direct Trade, plus;

3.     An interest fee calculated at the Applicable Security Coupon Rate associated with the Rejected Loan and multiplied by the aggregate unpaid principal balance of such Rejected Loan for the number of days between the Suspension Cure Date and either the date of the pair-off or the date that a substitute Eligible Mortgage Loan submitted to and accepted by Buyer for purchase is purchased.

## X.     REPURCHASE OF MORTGAGE LOANS

A.     In the event that Buyer, FNMA, FHLMC, FHA or VA as applicable, reject a Mortgage Loan prior to the date such loan is sold to them or pooled into a mortgage backed security, and Buyer has purchased the rejected Mortgage Loan from Seller, then Seller shall repurchase such Mortgage Loan, and Buyer shall have all other remedies as set forth in the LPA.  In addition, Seller shall pay Buyer the applicable amounts calculated pursuant to Paragraph IXB above.

B.     In each of the cases set forth in Paragraphs IXA, IXB and X.A above, Seller shall also indemnify and hold Buyer harmless from and against all costs, expenses and other charges incurred by the Buyer as provided for in the LPA and Guide.

## XI.     COMMITMENT PERIOD.

The term of this AOT Addendum will extend from April 20, 1995, to October 31, 1995, and on October 31, 1995, this AOT Addendum shall terminate;  however, this AOT Addendum may be extended by the written consent of both Buyer and Seller.

## XII.     TERMINATION.

In addition to the termination provision set forth in Section X above, this AOT Addendum may be terminated by the mutual consent of Buyer and Seller or upon the giving of 30 days notice by either party to the other. Notice shall be effective (I) when received, (ii) four (4) days after being sent by certified or registered U.S. Mail, or (iii) two (2) days after being delivered by an overnight courier. Should Seller breach any of the terms or conditions of this AOT Addendum, the LPA or the Guide, Buyer may terminate this AOT Addendum immediately without notice to Seller.  Termination of this AOT Addendum shall not in any way affect either Seller's or Buyer's obligations, representations, warranties or indemnifications with respect to Eligible Mortgage Loans already purchased by, or Trades already assigned to, Buyer; provided, however, that Buyer may immediately terminate its obligations hereunder without notice and immediately re-assign any unfilled Trades and/or return any Eligible Mortgage Loans not purchased back to Seller, and Seller shall accept such re-assignment or return, as applicable, if Buyer reasonably determines that there has been any non-performance, deception, fraud, concealment or material misrepresentation by Seller in performing any of its duties, obligations, responsibilities or actions undertaken in connection with this AOT Addendum including but not limited to Seller's:

(i)     origination or servicing of the Eligible Mortgage Loans;

7

    (ii)     purchase or assignment of any Trade;

    (iii)    assignment or delivery of any Eligible Mortgage Loan to Buyer;

    (iv)    making of any representation or warranty;

    (v)     performance of its repurchase obligations;

    (vi)    adjudication as a bankrupt, insolvency or application for or consent to the appointment of a receiver, trustee, liquidator, custodian or similar official for itself or any of its properties or assets;

    (vii)   assignment or attempt to assign any of its rights or obligations under this AOT Addendum without the prior written consent of Buyer;

    (viii)  breach any of its obligations under this AOT Addendum;

    (ix)    failure to be a qualified originator of Eligible Mortgage Loans in any jurisdiction where mortgaged property securing any Eligible Mortgage Loan is located.

In such event, Buyer shall be entitled to avail itself of all remedies as set forth in the AOT Addendum, the LPA and the Guide.

Additionally, Buyer may terminate this AOT Addendum with thirty (30) days written notice to Seller should any Federal or State law be enacted which adversely affects the value of the servicing rights being acquired, including, but not limited to, changes in law impacting interest on escrow balance requirements.

**XIII.**    <u>**FINANCIAL STATEMENTS.**</u>

Seller shall provide Buyer with interim financial statements and other information at least quarterly within sixty (60) days following the end of each quarter.  Seller shall provide audited financial statements certified by an independent certified public accountant within one hundred (100) days following the end of Seller's fiscal year.

**XIV.**    <u>**RIGHT OF OFFSET AND DELIVERY OF PAYMENTS.**</u>

    **A.**    In addition to any rights now or hereafter granted under this AOT Addendum, the LPA or Guide by applicable law or otherwise, and not by way of limitation of any such rights, Buyer is hereby authorized at any time or from time to time, without presentment, demand, protest or other notice of any kind to Seller or to any other person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all amounts at any time owing by Buyer to or for the credit or the account of Seller against and on account of the obligations and liabilities of Seller to Buyer under this AOT Addendum, irrespective of whether or not Buyer shall have made any demand therefor.

    **B.**    Except as expressly otherwise set forth in this AOT Addendum, the LPA or Guide, any amounts due from Seller to Buyer pursuant to any provision of this AOT Addendum, the LPA or Guide shall be remitted by Seller to Buyer no later than five (5) Business Days from Seller's receipt of notice from Buyer of the amounts due hereunder.

**XV.**    <u>**EXHIBITS.**</u>

All exhibits attached hereto or referred to in this AOT Addendum are incorporated by reference into this AOT Addendum and made a part hereof.

8

**XVI.   ASSIGNMENT.**

Seller may not assign its rights or obligations under this AOT Addendum without the prior written consent of Buyer.  This AOT Addendum shall be binding and inure to the benefit of Buyer's successors and assigns.

**Countrywide Funding Corporation**

**ComUnity Lending**

By:   Andrew Gissinger III
      Senior Vice President

By:   THONG   HONG

Date:   April 20, 1995

Date:   APRIL  21, 1995

ASSIGNMENT OF TRADE ADDENDUM
EXHIBITS


A.    Terms Sheet

B.    Security Dealer List

C.    Assignment of Trade

D.    Delivery Notice

E.    Delivery Date Schedule

## AGREEMENT

This Agreement, which is entered into by and between Countrywide Funding Corporation ("Countrywide") and ComUnity Lending ("ComUnity" or "Seller") as of April 13, 1995, is for the purpose of documenting the terms and conditions under which Seller shall meet its repurchase obligation to Countrywide with respect to CFC Loan No. 6142814 (the "Vimadalal Loan").

Seller's repurchase obligation with respect to the Vimadalal Loan (the "Repurchase Obligation") arose under the Loan Purchase Agreement entered into by and between Countrywide and Seller as of December 30, 1988, and amended as of June 28, 1989 (the "December 1988 LPA"). Countrywide and Seller have agreed that the amount owed by Seller to Countrywide under the Repurchase Obligation was $223,476.49 (the "Repurchase Obligation Amount"). Seller has agreed to pay the Repurchase Obligation Amount to Countrywide and Countrywide has agreed to accept such payment to satisfy the Repurchase Obligation.

Effective as of July 28, 1994, Seller and Countrywide also entered into a Loan Purchase Agreement (the "July 1994 LPA"), which was subsequently amended by execution of an Assignment of Trade Addendum (the AOT Addendum").

Seller and Countrywide previously agreed that Countrywide would deduct 10 basis points from the service release premium payable to Seller pursuant to its Assignment of Trade ("AOT") fundings under the AOT Addendum until the Repurchase Obligation Amount of $223,476.49 had been collected by Countrywide in full. Effective January 1, 1995, Seller and Countrywide further agreed to deduct 10 basis points from the service release premiums payable to Seller in connection with non-AOT deliveries under the July 1994 LPA.

As of March 31, 1995, the outstanding Repurchase Obligation Amount has been reduced to approximately $179,475.85. ComUnity agrees that it shall pay off this remaining balance by August 31, 1996. The parties anticipate and intend that ComUnity shall pay this balance by the following means: ComUnity is offering for sale approximately $250,000,000 of its FNMA and FHLMC servicing portfolio. ComUnity has engaged Countrywide Servicing Exchange (CSE) to act as its exclusive broker in such sale. ComUnity agrees that upon its receipt of any proceeds from such servicing sale, ComUnity shall immediately pay to Countrywide an amount equal to $54,000 as a partial reduction of its outstanding debt. In addition, effective as of May 1, 1995, and regardless of whether or not the anticipated servicing sales takes place, the parties agree that ComUnity will pay to Countrywide, at the end of each month, the higher of $8,000 or an amount equal to 0.10% (10 basis points) of the principal balance of all loans sold by ComUnity to Countrywide during the month (the "Monthly Payment") until the earlier of August 31, 1996, or the Repurchase Obligation Amount has been paid in full. The determination as to the specific amount due from ComUnity each month shall be made by Countrywide at, and as of the end of each month, and Countrywide shall provide a bill to ComUnity of such amount due. ComUnity agrees to promptly make the Monthly Payment due to Countrywide by wire transfer to be received no later than the 5th business day following the receipt by ComUnity of such bill from Countrywide.

The parties intend that the combination of the $54,000 payment from the proceeds of the servicing sale and the Monthly Payments will result in the Repurchase Obligation Amount having been paid in full as of August 31, 1996. ComUnity agrees that the Repurchase Obligation Amount shall be due and payable in full as of August 31, 1996, regardless of whether or not the anticipated servicing sale takes place.

Seller acknowledges that Countrywide has agreed to accept Seller's payment of the Repurchase Obligation Amount by these means solely as an accommodation to Seller. The fact that Countrywide has agreed, subject to the terms and conditions set forth in this agreement, to accept payment of the Repurchase Obligation Amount with respect to the Vimadalal Loan in the manner described in this Agreement shall not constitute a waiver of any term of the December 1988 LPA or of the right to enforce any such term with respect to the Vimadalal Loan or any other loan subject to the December 1988 LPA. Further, nothing in this Agreement shall relieve Seller of any Repurchase Obligation which may arise with respect to any loan purchased by Countrywide from Seller pursuant to the July 1994 LPA, and such LPA remains in full force and effect.

Seller further agrees that any breach of this Agreement, including without limitation, a failure to make any Monthly Payment or to pay to Countrywide $54,000 of proceeds from the anticipated servicing sale, shall constitute a breach of the July 1994 LPA and subject ComUnity to the provisions and remedies available to Countrywide in the July 1994 LPA.


**ComUnity Lending**

By: _____
        Signature

Name: THONG HONG

Its: SENIOR VICE PRESIDENT

Date: APRIL 24, 1995


**Countrywide Funding Corporation**

By: _____
        Signature

Name: Bradley T. Hodgins

Its:    Vice President, Commitment Desk

Date: April 21, 1995

# AGREEMENT

This Agreement, which is entered into by and between Countrywide Funding Corporation ("Countrywide") and ComUnity Lending ("ComUnity" or "Seller") as of April 13, 1995, is for the purpose of documenting the terms and conditions under which Seller shall meet its repurchase obligation to Countrywide with respect to CFC Loan No. 6142814 (the "Vimadalal Loan").

Seller's repurchase obligation with respect to the Vimadalal Loan (the "Repurchase Obligation") arose under the Loan Purchase Agreement entered into by and between Countrywide and Seller as of December 30, 1988, and amended as of June 28, 1989 (the "December 1988 LPA"). Countrywide and Seller have agreed that the amount owed by Seller to Countrywide under the Repurchase Obligation was $223,476.49 (the "Repurchase Obligation Amount"). Seller has agreed to pay the Repurchase Obligation Amount to Countrywide and Countrywide has agreed to accept such payment to satisfy the Repurchase Obligation.

Effective as of July 28, 1994, Seller and Countrywide also entered into a Loan Purchase Agreement (the "July 1994 LPA"), which was subsequently amended by execution of an Assignment of Trade Addendum (the AOT Addendum").

Seller and Countrywide previously agreed that Countrywide would deduct 10 basis points from the service release premium payable to Seller pursuant to its Assignment of Trade ("AOT") fundings under the AOT Addendum until the Repurchase Obligation Amount of $223,476.49 had been collected by Countrywide in full. Effective January 1, 1995, Seller and Countrywide further agreed to deduct 10 basis points from the service release premiums payable to Seller in connection with non-AOT deliveries under the July 1994 LPA.

As of March 31, 1995, the outstanding Repurchase Obligation Amount has been reduced to approximately $179,475.85. ComUnity agrees that it shall pay off this remaining balance by August 31, 1996. The parties anticipate and intend that ComUnity shall pay this balance by the following means: ComUnity is offering for sale approximately $250,000,000 of its FNMA and FHLMC servicing portfolio. ComUnity has engaged Countrywide Servicing Exchange (CSE) to act as its exclusive broker in such sale. ComUnity agrees that upon its receipt of any proceeds from such servicing sale, ComUnity shall immediately pay to Countrywide an amount equal to $54,000 as a partial reduction of its outstanding debt. In addition, effective as of May 1, 1995, and regardless of whether or not the anticipated servicing sales takes place, the parties agree that ComUnity will pay to Countrywide, at the end of each month, the higher of $8,000 or an amount equal to 0.10% (10 basis points) of the principal balance of all loans sold by ComUnity to Countrywide during the month (the "Monthly Payment") until the earlier of August 31, 1996, or the Repurchase Obligation Amount has been paid in full. The determination as to the specific amount due from ComUnity each month shall be made by Countrywide at, and as of the end of each month, and Countrywide shall provide a bill to ComUnity of such amount due. ComUnity agrees to promptly make the Monthly Payment due to Countrywide by wire transfer to be received no later than the 5th business day following the receipt by ComUnity of such bill from Countrywide.

The parties intend that the combination of the $54,000 payment from the proceeds of the servicing sale and the Monthly Payments will result in the Repurchase Obligation Amount having been paid in full as of August 31, 1996.  ComUnity agrees that the Repurchase Obligation Amount shall be due and payable in full as of August 31, 1996, regardless of whether or not the anticipated servicing sale takes place.

Seller acknowledges that Countrywide has agreed to accept Seller's payment of the Repurchase Obligation Amount by these means solely as an accommodation to Seller.  The fact that Countrywide has agreed, subject to the terms and conditions set forth in this agreement, to accept payment of the Repurchase Obligation Amount with respect to the Vimadalal Loan in the manner described in this Agreement shall not constitute a waiver of any term of the December 1988 LPA or of the right to enforce any such term with respect to the Vimadalal Loan or any other loan subject to the December 1988 LPA. Further, nothing in this Agreement shall relieve Seller of any Repurchase Obligation which may arise with respect to any loan purchased by Countrywide from Seller pursuant to the July 1994 LPA, and such LPA remains in full force and effect.

Seller further agrees that any breach of this Agreement, including without limitation, a failure to make any Monthly Payment or to pay to Countrywide $54,000 of proceeds from the anticipated servicing sale, shall constitute a breach of the July 1994 LPA and subject ComUnity to the provisions and remedies available to Countrywide in the July 1994 LPA.

**ComUnity Lending**

By: _____
   Signature

Name: THONG HONG

Its: SENIOR VICE PRESIDENT

Date: APRIL 24, 1995

**Countrywide Funding Corporation**

By: _____
   Signature

Name: Bradley T. Hodgins

Its:   Vice President, Commitment Desk

Date: April 21, 1995

## FIRST AMENDMENT TO THE ASSIGNMENT OF TRADE
## ADDENDUM AND DIRECT TRADE ADDENDUM

      This first amendment ("First Amendment") to the Assignment of Trade (AOT) Addendum and the Direct Trade Addendum (the "Addenda") to that Loan Purchase Agreement (the "LPA") dated July 28, 1994, by and between Countrywide Funding Corporation, a New York corporation ("Buyer"), and ComUnity Lending, ("Seller"), is entered into as of the 13th day of June, 1995. All capitalized terms used in this First Amendment, to the extent not otherwise defined in this Amendment, shall have the respective meanings for such terms set forth in the Addendums.

### R E C I T A L S

A.    Buyer and Seller entered into that certain Assignment of Trade Addendum and that certain Direct Trade Addendum both dated April 20, 1995, whereby Buyer agreed to purchase from Seller and Seller agreed to sell to Buyer of all of its right, title and interest in those certain FHA, VA and/or Conventional mortgage loans to be pooled by Buyer into Mortgage Backed Securities guaranteed by the Government National Mortgage Association (GNMA), Federal National Mortgage Corporation (FHMA) and/or Federal Home Loan Mortgage Corporation (FHLMC).

B.    BUYER and SELLER desire to amend the AOT and Direct Trade Terms Sheet and the Addenda, as set forth in this First Amendment.

      In consideration of the mutual promises, covenants, and conditions hereinafter set forth, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

      The minimum face amount of each Third Party Trade assigned to CFC and the corresponding Minimum Delivery Amount shall be $500,000 for Third Party Trades covering FNMA MBS, FHLMC PC, GNMA I and GNMA II securities.

      All other terms and conditions shall remain the same.

      IN WITNESS WHEREOF, the parties have caused this document to be executed by their proper corporate officers as of the day and year first above written.

**COUNTRYWIDE FUNDING CORPORATION**

By:_____

Andrew Gissinger III    6/13/95
Senior Vice President

**COMUNITY LENDING**

By:_____

Thong Hong    Date
Senior Vice President



**COUNTRYWIDE**
*Correspondent Lending*

November 1, 1995

Mr. Thong Hong
Senior Vice President
**ComUnity Lending**
175 Bernal Road
Suite 260
San Jose, CA 95119

RE:   **"AOT" and "Direct Trade" Programs -Terms Sheet**

Dear Mr. Hong:

I am writing to confirm the terms under which Countrywide Funding Corporation ("CFC") would enter into an agreement for the purchase of loans from ComUnity Lending ("ComUnity" or "Seller") under CFC's "Assignment of Trade Program" ("AOT Program") or "Direct Trade Program" as described below:

1.   GENERAL

Under the AOT program or Direct Trade Program, Seller shall deliver qualifying mortgage loans to CFC in groups rather than on an individual basis. Each such delivery of a group of loans shall hereinafter be referred to as a "Delivery." The required minimum aggregate principal balance of a Delivery, as discussed below, shall hereinafter be referred to as the "Minimum Delivery Amount."

2.   PROGRAM DESCRIPTION/DELIVERY OPTIONS:

a.   Assignment of Trade Program

Under the AOT Program, promptly after receipt by CFC of each Delivery from Seller and prior to CFC's purchase of the loans comprising such Delivery, Seller shall assign to CFC a corresponding trade (a "Third Party Trade") for the forward sale of a mortgage backed security, entered into by Seller with a CFC authorized securities dealer.  The individual mortgage loans comprising a Delivery related to a particular Third Party Trade, shall in every way qualify for inclusion into the mortgage backed security which is the subject of the Third Party Trade.  The minimum face amount of each Third Party Trade assigned to CFC and the corresponding Minimum Delivery Amount shall be $500,000 for Third Party Trades covering FNMA MBS, FHLMC PC, GNMA I and GNMA II securities.  After CFC accepts assignment of a Third Party Trade, CFC shall purchase each mortgage loan comprising the related Delivery at a purchase price equal to the price to be paid CFC for the security as specified on the Third Party Trade, and CFC shall further pay Seller the servicing released premiums specified below.

b.   Direct Trade Program

Under the Direct Trade Program, Seller shall enter into a trade directly with CFC, (a "Direct Trade") rather than assigning a Third Party Trade. Under this delivery option, loans shall be delivered in a manner similar to the AOT program, except as discussed below:

i)   The Minimum Delivery Amount applicable to each Direct Trade shall be $250,000.

ii)   Individual loans comprising a Delivery and which are the subject of a Direct Trade may be of different loan types (e.g. conventional and government, 30 Year and 15 Year, etc.) and

*155 North Lake Avenue Pasadena, California 91101 (800) 669-6680*

may have note rates that would not otherwise qualify all such loans for inclusion in the same mortgage backed security.

iii)   All loans comprising a Delivery shall be delivered to and received by CFC no later than five (5) business days after the date the related Direct Trade was entered into.  Upon entering into a Direct Trade, Seller shall have a mandatory obligation to deliver all loans comprising the Delivery within such five business day period, such that any portion of the Delivery which is not filled within such time frame shall be subject to a mark to market pair-off fee which Seller shall pay to CFC.

iv)   CFC shall price each individual loan which is the subject of a Direct Trade separately at a price equal to the bid price obtainable by CFC at the time of the Direct Trade (subject to a price cap), for the forward sale of the mortgage backed security.  To the extent that the individual loan being priced is a conventional loan and can be included in either a FNMA MBS or FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types CFC is to base its price quote on. The issue date and related forward settlement date of the Applicable Security on which the loan price shall be based, will be determined by reference to that date during the month on which the corresponding Delivery is to be received by CFC pursuant to the provisions of paragraph 12 below.

| | | |
|---|---|---|
| 3. | Term of Contract: | Six months. |
| 4. | Loan types: | Loans qualifying for delivery hereunder shall be FNMA and FHLMC conforming and FHA insured and VA guaranteed mortgage loans underwritten, closed, and delivered pursuant to the guidelines in CFC's Correspondent Lending Division's Seller Manual (the "Guide"). |
| 5. | Delivery volume: | A minimum of $10 million and a maximum of $20 million aggregate principal balance per month. |
| 6. | Types of trades which may be assigned (under AOT Program) or on which Direct Trade prices will be based: | FNMA MBS    FHLMC GOLD PC<br>GNMA I      GNMA II |
| 7. | Servicing Pricing Definitions: | "Delivery": the group of loans to be delivered for purchase associated with a particular trade to be assigned. |

"Gross Spread": the difference between note rate on a loan and the security coupon on its associated trade.

"Net Spread":  the difference between the Gross Spread and the Adjusted Guarantee Fee.

"Base Guarantee Fee": shall be the following as applicable:
FHLMC PC      =   0.23%
FNMA MBS      =   0.20%
GNMA I & II   =   0.06%

"Adjusted Guarantee Fee": shall be the Base Guarantee Fee as adjusted for any allowable Buyups or Buydowns of such Base Guarantee Fee pursuant to Paragraph 8 below.

*ComUnity Terms Letter*                                          November 1, 1995
*Page 3*

"Base Spread" : 0.25% (25 basis points) for conventional loans and 0.44% (44 basis points) for government loans.

"Excess Spread": the excess of Net Spread over the Base Spread.

"Excess Margin": on FHA or VA ARM loans, the amount of the mortgagor's Gross Margin in excess of 2.0%.

8.   **Buyups and Buydowns:**   Buyups and Buydowns of the Guarantee Fee will be applied to the extent allowable per FNMA/FHLMC guidelines at the standard multiples as published by FHMLC and FNMA at time of Delivery. The purchase price of a mortgage loan shall be increased by any Buyup credit applied, and decreased by any Buydown cost applied.

9.   Service Released Premium Percentages - <u>Conventional Loans</u>

|                      | <u>30 YR</u> | <u>15 YR</u> |
|----------------------|--------|--------|
| **Base Price for loans** | **1.60%** | **1.30%** |

Service Released Premium Percentages - Government Loans

|                                   | <u>30 YR</u> | <u>15 YR</u> |
|-----------------------------------|--------|--------|
| **Base Price for FHA fixed rate loans** | **2.30%** | **1.75%** |
| **Base Price for VA fixed rate loans** | **1.925%** | **1.375%** |
| **Base Price for FHA ARM loans** | **1.55%** |  |
| **Base Price for VA ARM loans** | **1.175%** |  |

For such period as the Service Released Premium Base Price for VA fixed rate loans is 1.925% for 30-year loans and 1.375% for 15-year loans and the Service Released Premium Based Price for VA ARM loans is 1.175%, Subsection 7.A.(6) of the LPA shall not be in effect.

10.   **Premiums for Excess Spread:**

CFC shall pay the following additional premiums for Excess Spread (e.g. excess servicing):

| <u>Loan Type</u> | <u>Premium</u> | Max. Excess <u>Spread</u> |
|-----------|---------|--------------|
| Conv. 30 year | 4.00 to 1 | 0.25% |
| Conv. 15 year | 3.50 to 1 | 0.25% |
| Gov't 30 year | 4.00 to 1 | 0.50% |
| Gov't 15 year | 3.50 to 1 | 0.50% |
| Gov't ARM-30 year | 3.00 to 1* | 0.50% |

*Must have a corresponding amount of Excess Margin.

*ComUnity Terms Letter*                                      November 1, 1995
*Page 4*

11.    Premiums for Excess Margin:

CFC shall pay the following additional premium for Excess Margin:

| Loan Type | Premium | Excess Margin |
|-----------|---------|---------------|
| Gov't ARM-30 year | 2.25 to 1 | 0.01%-0.25% |
| Gov't ARM-30 year | 1.75 to 1 | 0.26%-0.50% |
| Gov't ARM-30 year | 1.00 to 1 | 0.51%-0.75% |
| Gov't ARM-30 year | 0.50 to 1 | 0.76%-1.00%* |

*   Maximum Gross Margin for which CFC shall pay a premium is 3.00%.

Note:  to the extent a government ARM loan contains Excess Spread for which a premium is paid pursuant to paragraph 10 above, no premium shall be paid for the corresponding amount of Excess Margin.

**Provision:**
Buyer shall have the option upon thirty (30) days notice to the Seller to change or rescind this provision relative to payment for Excess Margin on FHA and VA ARM loans.

12.    Delivery Deadlines/
       Window Period Deliveries:

Generally, the last day on which loans may be delivered in relation to particular trades ("Delivery Deadline") is as follows:

| Security | Business days prior to the applicable PSA Settlement Dates |
|----------|-----------------------------------------------------------|
| FNMA | 17 |
| FHLMC | 19 |
| GNMA I | 17 |
| GNMA II | approx. 24* |

* See the Correspondent Lending Division's delivery schedule for deadlines applicable to specific settlement months, published monthly.  In November:  Final Delivery Date: 10/27/95, Pool Cutoff Date 11/1/95, PSA Settlement Date: 11/13/95.

For loans and associated Trades delivered after a Delivery Deadline, but before the end of the month, CFC shall increase the service release premium by the following amounts:
30 YR Fixed Rate loans:  .15% (15 basis points)
15 YR Fixed Rate loans:  .10% (10 basis points)

13.    Fees:

- A tax service fee will be charged as provided in the Correspondent Lending Division guide.
- A funding fee equal to $150 will be charged on each loan.
- The price paid for conventional loans on non-owner-occupied properties shall be reduced by 1.5% (150 basis points).

*ComUnity Terms Letter*                                      November 1, 1995
*Page 5*

14.   Maximum and Minimum Note       MAXIMUM NOTE RATE:
      Rates:

The maximum note rate on each of the fixed rate mortgage loans delivered under this commitment ("Maximum Note Rate") shall be no greater than one percent (1%) above the coupon rate of the applicable Agency security trading closest to par (the "Applicable Coupon Rate").

The Applicable Coupon Rate shall be the higher of the rate determined as of:
   i)  the time the mortgage rates and points were committed to the borrower or,
   ii) the time the trade is assigned to CFC.

Should the note rate on the mortgage loans delivered exceed the Maximum Note Rate, then the servicing release premium shall be reduced by the following amounts on any such loans:

| Max Note Rate above par | Deduction |
| --- | --- |
| 1.01% to 1.50% | 50 basis pts |
| 1.51% to 2.00% | 75 basis pts |
| 2.01% or greater | no deduct. |

MINIMUM NOTE RATE:

The minimum note rate  (the "Minimum Note Rate"), relating only to government ARM loans, which shall be deliverable hereunder shall be no lower than .50% below the coupon rate of the applicable Agency security trading closest to par (the Applicable GNMA II Coupon Rate").

The Applicable GNMA II Coupon Rate shall be the lower of the rate determined as of:
   I)  the time the mortgage rates and points were committed to the borrower or,
   ii) the time the trade is assigned to CFC.

If the note rate on a loan delivered to CFC is below the Minimum Note Rate, CFC may, at its option, purchase the loan;  however, CFC shall not pay any premium for Excess Margin.

15.   Loan Characteristics:           •   Minimum average loan balance (calculated on a monthly basis):
                                          Conv.    $ 110,000
                                          Govt.    $ 120,000

*ComUnity Terms Letter*                                           November 1, 1995
*Page 6*

- Geography:

  Loans on properties in any state within the continental
  United States may be delivered, subject to the following
  monthly volume limitations, expressed as a maximum
  percentage of the total monthly UPB delivery:

  | State | Max. Monthly Delivery |
  |---|---|
  | CA | 35% |
  | UT | 30% |
  | CT, MA, ME, MN, NH, NY, OR, RI | 10% in aggregate |

- No subsidized loans (e.g. 235's, 265's, 203K's) or HUD
  REO loans may be delivered hereunder.

- No more than 5% of loans delivered may be buydown
  loans.

- No more than 60% of government loans delivered may be
  VA loans. However, on all VA rate-reduction refinance
  loans in "soft market" areas, CFC will require a
  recertification of value. Presently these areas are defined
  as California and Louisiana.

- No more than 50% of the loans delivered may be ARM
  loans. The SRP for each ARM loan delivered in excess of
  this percentage will be subject to a 0.375% reduction,
  which will be assessed at the end of the commitment
  period.  Seller agrees to immediately pay the amount
  billed upon receipt of written invoice from CFC.

- No more than 3% of the loans may be on properties with 2
  to 4 units.

- All loans must be less than 3 months seasoned at time of
  delivery.

- No more than 15% of the loans delivered may be on
  Condominium properties.

- No more than 20% of the conventional loans delivered may
  have LTV ratios greater than 90%. The SRP for each
  conventional loan delivered in excess of this percentage
  will be subject to a 0.25% reduction, which will be assessed
  at the end of the commitment period.  Seller agrees to
  immediately pay the amount billed upon receipt of written
  invoice from CFC.

- No more than 5% of the loans may be secured by non-
  owner occupied properties.

*ComUnity Terms Letter*                                     November 1, 1995
*Page 7*

- A minimum of 15% of the loans delivered will be from the Seller's retail production.

- At least 70% of the conventional loans delivered must be loans with T&I impounds.

16. Termination                Either party shall have the right to terminate this agreement on thirty days prior written notice to the other party.

17. Expiration                 Unless accepted earlier, this offer shall expire on November 8, 1995.

The transaction contemplated herein will be subject to the execution of a mutually acceptable flow purchase and sale agreement, the satisfactory completion of a due diligence review of ComUnity by CFC and CFC's review of ComUnity's financial condition.

If the terms highlighted above are acceptable to ComUnity, please acknowledge below and return an executed copy of this term letter back to us.

We look forward to working with you on this transaction.

Sincerely,

Andrew Gissinger III
Senior Vice President

Countrywide Correspondent Lending Division
155 North Lake Avenue
Mail Stop 5-53
Pasadena, CA 91101

ComUnity Lending

By: _____

Title: Thong Hong
       COO / SVP

Date: 11/7/95

SENT BY:COUNTRYWIDE      ·11- 8-95 ·  18:32 · CFC CORRES. LENDING.→        408 225 0434;# 2/ 3

## AMENDMENT TO LOAN PURCHASE AGREEMENT

This Amendment, which shall be effective with respect to Loans purchased by Countrywide from Seller on and after August 1, 1995 (the "Effective Date"), amends the Loan Purchase Agreement dated the _____28th_____ day of ____July____ , 19_94_ by and between Countrywide Funding Corporation ("Countrywide") and ComUnity Lending, Inc. ("Seller") (the "Agreement") and shall modify, amend and form a part of the terms of the Agreement. The terms and conditions of the Agreement are incorporated herein by reference. All capitalized terms contained in this Amendment shall have the same meaning as in the Agreement, unless they are otherwise defined in this Amendment. In the event of any conflict between the terms and conditions of the Agreement and this Amendment, the terms and conditions of this Amendment shall prevail.

1.  With respect to Loans purchased by Countrywide from Seller on and after the Effective Date, Subsection 7.A.(4) of the Agreement is amended to read as provided below. This amendment is *not* retroactive and shall be in effect only for Loans purchased by Countrywide on and after the Effective Date. With respect to Loans purchased by Countrywide from Seller prior to the Effective Date, Subsection 7.A.(4) of the Agreement shall apply as if this Amendment had not been entered into.

    "(4)    If the first payment due Countrywide is not received by Countrywide, whether from the borrower directly or forwarded by Seller if the Borrower has submitted the payment to Seller, by the last day of the month in which it is due, and, in addition, at any time within the first twelve months after the Loan has been purchased by Countrywide the Borrower is 90 days delinquent with respect to a monthly payment. For this purpose a Borrower shall be considered to be 90 days delinquent on a monthly payment if it is not received by Countrywide by the last day of the third month, regardless of the number of days in the month. For example, if the Borrower has not made his/her January payment by the last day of March, the Borrower shall be considered 90 days delinquent with respect to the January payment. Seller shall not have the right to advance funds for or on behalf of a Borrower for any delinquent payment or to otherwise make funds available to any Borrower to avoid or cure a default by the Borrower. A payment for which Countrywide deducted funds at the time it purchased the Loan from Seller shall not be considered the first payment due Countrywide.

2.  With respect to Loans purchased by Countrywide from Seller on and after the Effective Date of this Amendment, Subsection 7.A.(6) of the Agreement is deleted, except with respect to Loans which are purchased by Countrywide on an Assignment of Trade basis pursuant to an Assignment of Trade Addendum entered into between the parties or on a Direct Trade basis pursuant to a Direct Trade Addendum entered into between the parties. The provisions of 7.A.(6) shall remain in full force and effect for any Loans heretofore or hereinafter purchased by Countrywide pursuant to an Assignment of Trade Addendum or Direct Trade Addendum and for all Loans purchased by Countrywide pursuant to the Agreement prior to the Effective Date of this Amendment.

IN WITNESS WHEREOF, the parties have duly executed this Amendment to be effective as of the Effective Date set forth above.

COUNTRYWIDE FUNDING CORPORATION

By: _~~Dawn Brayton~~_                    Date: _11-29-95_

Name: __Dawn Brayton__                    Its: __Vice President__

SELLER: __ComUnity Lending, Inc.__

By: _~~W. Darryl Fry~~_                    Date: _11/17/95_

Name: __W. Darryl Fry__                    Its: __President__



**CORRESPONDENT LENDING**

May 22, 1996

Mr. Thong Hong, Senior Vice President
**ComUnity Lending**
175 Bernal Road, Suite 260
San Jose, CA 95119

RE:    **"AOT" and "Direct Trade" Programs -Terms Sheet**

Dear Mr. Hong:

I am writing to confirm the terms under which Countrywide Home Loans, Inc. ("Countrywide") would enter into an agreement for the purchase of loans from ComUnity Lending ("ComUnity" or "Seller") under Countrywide's "Assignment of Trade Program" ("AOT Program") or "Direct Trade Program" as described below:

1.  GENERAL

    This Terms Sheet is an Amendment to and a part of the Assignment of Trade Addendum and Direct Trade Addendum, executed by the parties on November 7, 1995.

    Under the AOT program or Direct Trade Program, Seller shall deliver qualifying mortgage loans to Countrywide in groups rather than on an individual basis. Each such delivery of a group of loans shall hereinafter be referred to as a "Delivery." The required minimum aggregate principal balance of a Delivery, as discussed below, shall hereinafter be referred to as the "Minimum Delivery Amount."

2.  PROGRAM DESCRIPTION/DELIVERY OPTIONS:

    a.  Assignment of Trade Program

    Under the AOT Program, promptly after receipt by Countrywide of each Delivery from Seller and prior to Countrywide's purchase of the loans comprising such Delivery, Seller shall assign to Countrywide a corresponding trade (a "Third Party Trade") for the forward sale of a mortgage backed security, entered into by Seller with a Countrywide authorized securities dealer. The individual mortgage loans comprising a Delivery related to a particular Third Party Trade, shall in every way qualify for inclusion into the mortgage backed security which is the subject of the Third Party Trade. The minimum face amount of each Third Party Trade assigned to Countrywide and the corresponding Minimum Delivery Amount shall be $500,000 for Third Party Trades covering FNMA MBS, FHLMC PC, GNMA I and GNMA II securities. After Countrywide accepts assignment of a Third Party Trade, Countrywide shall purchase each mortgage loan comprising the related Delivery at a purchase price equal to the price to be paid Countrywide for the security as specified on the Third Party Trade, and Countrywide shall further pay Seller the servicing released premiums specified below.

    b.  Direct Trade Program

    Under the Direct Trade Program, Seller shall enter into a trade directly with Countrywide, (a "Direct Trade") rather than assigning a Third Party Trade. Under this delivery option, loans shall be delivered in a manner similar to the AOT program, except as discussed below:

    i)    The Minimum Delivery Amount applicable to each Direct Trade shall be $250,000.

    ii)   Individual loans comprising a Delivery and which are the subject of a Direct Trade may be of different loan types (e.g. conventional and government, 30 Year and 15 Year, etc.) and may have note rates that would not otherwise qualify all such loans for inclusion in the same mortgage backed security.

*155 North Lake Avenue Pasadena, California 91101 (800) 669-6680*

*ComUnity Terms Letter*
*Page 2*                                                                May 22, 1996

iii)   All loans comprising a Delivery shall be delivered to and received by Countrywide no later than five (5) business days after the date the related Direct Trade was entered into. Upon entering into a Direct Trade, Seller shall have a mandatory obligation to deliver all loans comprising the Delivery within such five business day period, such that any portion of the Delivery which is not filled within such time frame shall be subject to a mark to market pair-off fee which Seller shall pay to Countrywide.

iv)   Countrywide shall price each individual loan which is the subject of a Direct Trade separately at a price equal to the bid price obtainable by Countrywide at the time of the Direct Trade (subject to a price cap), for the forward sale of the mortgage backed security. To the extent that the individual loan being priced is a conventional loan and can be included in either a FNMA MBS or FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types Countrywide is to base its price quote on. The issue date and related forward settlement date of the Applicable Security on which the loan price shall be based, will be determined by reference to that date during the month on which the corresponding Delivery is to be received by Countrywide pursuant to the provisions of paragraph 12 below.

| | | |
|---|---|---|
| 3. | Term of Contract: | Six months, beginning June 1, 1996, and ending November 30, 1996. |
| 4. | Loan types: | Loans qualifying for delivery hereunder shall be FNMA and FHLMC conforming and FHA insured and VA guaranteed mortgage loans underwritten, closed, and delivered pursuant to the guidelines in Countrywide's Correspondent Lending Division's Seller Manual (the "Guide"). |
| 5. | Delivery volume: | A minimum of $10 million and a maximum of $20 million aggregate principal balance per month. |
| 6. | Types of trades which may be assigned (under AOT Program) or on which Direct Trade prices will be based: | FNMA MBS       FHLMC GOLD PC<br>GNMA I           GNMA II |
| 7. | Servicing Pricing Definitions: | "Delivery": the group of loans to be delivered for purchase associated with a particular trade to be assigned. |

"Gross Spread": the difference between note rate on a loan and the security coupon on its associated trade.

"Net Spread": the difference between the Gross Spread and the Adjusted Guarantee Fee.

"Base Guarantee Fee": shall be the following as applicable:

| | | |
|---|---|---|
| FHLMC PC | = | 0.23% |
| FNMA MBS | = | 0.20% |
| FNMA 7 YR | = | 0.31% |
| FHLMC 7 YR | = | 0.32% |
| FHLMC 5 YR | = | 0.375% |
| GNMA I & II | = | 0.06% |

ComUnity Terms Letter                                             May 22, 1996
Page 3

"Adjusted Guarantee Fee": shall be the Base Guarantee Fee as adjusted for any allowable Buyups or Buydowns of such Base Guarantee Fee pursuant to Paragraph 8 below.

"Base Spread" : 0.25% (25 basis points) for conventional loans and 0.44% (44 basis points) for government loans.

"Excess Spread": the excess of Net Spread over the Base Spread.

"Excess Margin": on FHA or VA ARM loans, the amount of the mortgagor's Gross Margin in excess of 2.0%.

"Trade Assignment Date":  the date Seller assigns a Trade to Countrywide."

8.    Buyups and Buydowns:        Buyups and Buydowns of the Guarantee Fee will be applied to the extent allowable per FNMA/FHLMC guidelines at the standard multiples as published by FHLMC and FNMA at time of the Trade Assignment Date. The purchase price of a mortgage loan shall be increased by any Buyup credit applied, and decreased by any Buydown cost applied.

9.    Service Released Premium Percentages - <u>Conventional Loans</u>

|                                        | <u>30 YR</u> | <u>15 YR</u> |
|----------------------------------------|--------------|--------------|
| **Base Price for conventional loans**  | **1.60%**    | **1.35%**    |

Service Released Premium Percentages - <u>Balloon Loans</u>

|                                  | <u>7 YR</u> | <u>5 YR</u> |
|----------------------------------|-------------|-------------|
| **Base Price for Balloon loans** | **0.80%**   | **0.65%**   |

Service Released Premium Percentages - <u>Government Loans</u>

|                                        | <u>30 YR</u> | <u>15 YR</u> |
|----------------------------------------|--------------|--------------|
| **Base Price for FHA fixed rate loans**| **2.30%**    | **1.80%**    |
| **Base Price for FHA ARM loans**       | **1.50%**    |              |
| **Base Price for VA fixed rate loans\***| **1.925%**  | **1.425%**   |

*For individual loans delivered solely under this Terms Sheet, for such period as the Service Released Premium Base Price for VA fixed rate loans is 1.925% for 30-year loans and 1.425% for 15-year loans, Subsection 7.A.(6) of the LPA shall not be in effect.

Should any Eligible Mortgage Loan delivered hereunder pay off within one hundred twenty (120) days of the date of purchase by Countrywide, the Service Released Premium Percentage on such Loan shall be fully refundable to Countrywide.

*ComUnity Terms Letter*                                    May 22, 1996
*Page 4*

10.    Premiums for Excess Spread:

Countrywide shall pay the following additional premiums for Excess Spread (e.g. excess servicing):

| Loan Type | Premium | Max. Excess Spread |
|---|---|---|
| Conv. 30 year | 4.00 to 1 | 0.25% |
| Conv. 15 year | 3.50 to 1 | 0.25% |
| Balloon 7 year | 2.50 to 1 | 0.25% |
| Balloon 5 year | 2.50 to 1 | 0.25% |
| Gov't 30 year | 4.00 to 1 | 0.375%* |
| Gov't 15 year | 3.50 to 1 | 0.375%* |
| Gov't ARM-30 year | 3.00 to 1** | 0.50% |

*Countrywide shall price each loan to be pooled in a GNMA I security at a price equal to the bid price obtainable by Countrywide at the time of the Trade, for the forward sale of the mortgage backed security with the highest coupon (the "Applicable Security") into which such loan can be pooled by Countrywide.

**Must have a corresponding amount of Excess Margin.

11.    Premiums for Excess Margin:

Countrywide shall pay the following additional premium for Excess Margin:

| Loan Type | Premium | Excess Margin |
|---|---|---|
| Gov't ARM-30 year | 2.25 to 1 | 0.01%-0.25% |
| Gov't ARM-30 year | 1.75 to 1 | 0.26%-0.50% |
| Gov't ARM-30 year | 1.00 to 1 | 0.51%-0.75%* |

*  Maximum Gross Margin for which Countrywide shall pay a premium is 2.75%.

Note:  to the extent a government ARM loan contains Excess Spread for which a premium is paid pursuant to paragraph 10 above, no premium shall be paid for the corresponding amount of Excess Margin.

**Provision:**
Buyer shall have the option upon thirty (30) days notice to the Seller to change or rescind this provision relative to payment for Excess Margin on FHA and VA ARM loans.

*ComUnity Terms Letter*                                          May 22, 1996
*Page 5*

| | | |
|---|---|---|
| 12. | Delivery Deadlines/<br>Window Period Deliveries: | Generally, the last day on which loans may be delivered in relation to particular trades ("Delivery Deadline") is as follows: |

| Security | Business days prior to the applicable PSA Settlement Dates |
|---|---|
| FNMA | 17 |
| FHLMC | 19 |
| GNMA I | 17 |
| GNMA II | approx. 24* |

\* See the Correspondent Lending Division's delivery schedule for deadlines applicable to specific settlement months, published monthly.  In May:  Final Delivery Date: 4/25/96, Pool Cutoff Date 4/30/96, PSA Settlement Date: 5/13/96.

For Eligible Mortgage Loans and associated Trades delivered before the end of the month two months prior to the month of settlement (i.e. loans for a June Settlement trade must be Delivered by 4/30), Countrywide shall increase the service release premium by the following amounts:

    30 YR Fixed Rate loans:  .15% (15 basis points)
    15 YR Fixed Rate loans:  .10% (10 basis points)

| | | |
|---|---|---|
| 13. | Fees: | • A tax service fee will be charged as provided in the Correspondent Lending Division guide. |

- A tax service fee will be charged as provided in the Correspondent Lending Division guide.
- A funding fee equal to $150 will be charged on each loan.
- The price paid for conventional loans on non-owner-occupied properties shall be reduced by 1.5% (150 basis points).

| | | |
|---|---|---|
| 14. | Maximum and Minimum Note Rates: | MAXIMUM NOTE RATE: |

The maximum note rate on each of the fixed rate mortgage loans delivered under this commitment ("Maximum Note Rate") shall be no greater than one percent (1%) above the coupon rate of the applicable Agency security trading closest to par (the "Applicable Coupon Rate").

The Applicable Coupon Rate shall be the higher of the rate determined as of:
    i)  the time the mortgage backed security trade was established with an approved securities dealer
    ii) the time the trade is assigned to Countrywide.

Should the note rate on the mortgage loans delivered exceed the Maximum Note Rate, then the servicing release premium shall be reduced by the following amounts on any such loans:

| Max Note Rate above par | Deduction |
|---|---|
| 1.01% to 1.50% | 50 basis pts |
| 1.51% to 2.00% | 75 basis pts |
| 2.01% or greater | no SRP shall be paid. |

*ComUnity Terms Letter*                                                    May 22, 1996
*Page 6*

MINIMUM NOTE RATE:
The minimum note rate  (the "Minimum Note Rate"), relating
only to government ARM loans, which shall be deliverable
hereunder shall be no lower than .50% below the coupon rate
of the applicable Agency security trading closest to par (the
Applicable GNMA II Coupon Rate").

The Applicable Coupon Rate shall be the higher of the rate
determined as of:
    i)  the time the mortgage backed security trade was
       established with an approved securities dealer
    ii)  the time the trade is assigned to Countrywide.

If the note rate on a loan delivered to Countrywide is below the
Minimum Note Rate, Countrywide may, at its option, purchase
the loan;  however, Countrywide shall not pay any premium for
Excess Margin.

15.  Maximum Price Paid:          Irrespective of the above sections 8, 9, 10, 11, 12, 13 and
14, Countrywide will not pay a price on any individual loan
in excess of 105.0%, including the SRP.

16.    Loan Characteristics:

- Minimum average loan balance* (calculated on a monthly
basis):
  Conv.    $ 110,000
  Govt.     $ 120,000

- Geography:

  Loans on properties in any state within the continental
  United States may be delivered, subject to the following
  monthly volume limitations, expressed as a maximum
  percentage of the total monthly UPB delivery:

  | State | Max. Monthly Delivery |
  | --- | --- |
  | CA* | 45% |
  | UT | 30% |
  | OR | 10% |
  | CT, MA, ME, MN, NH, NY, RI | 5% in aggregate |

  * The SRP for each CA conventional fixed rate loan and
  government ARM loan delivered in excess of this
  percentage will be subject to a 0.25% reduction, and the
  SRP for each CA government fixed rate loan delivered in
  excess of this percentage will be subject to a 0.10%
  reduction, which will be assessed at the end of the
  commitment period.   Seller agrees to immediately pay the
  amount billed upon receipt of written invoice from
  Countrywide.

- No subsidized loans (e.g. 235's, 265's or 203K's) or HUD
REO loans may be delivered hereunder.

*ComUnity Terms Letter*
*Page 7*

May 22, 1996

- No more than 5% of loans delivered may be buydown loans.

- No more than 40% of government fixed rate loans delivered may be VA loans.  However, on all VA rate-reduction refinance loans in soft market areas, Countrywide will require a recertification of value.  Presently these areas are defined as California, Connecticut, Louisiana, Massachusetts, New York and New Jersey. The SRP for each VA loan delivered in excess of this percentage will be subject to a 0.25% reduction, which will be assessed at the end of the commitment period.  Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

- No more than 25% of the loans delivered during this commitment period may be government ARM loans.  The SRP for each  ARM loan delivered in excess of this percentage will be subject to a 0.375% reduction, which will be assessed at the end of the commitment period.  Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

- For each loan delivered under this Agreement, a flood zone determination (FZD), is required.  The FZD must conform with all requirements of the National Flood Insurance Reform Act of 1994 and be prepared by a provider approved by Countrywide.  Additionally, life-of-loan monitoring by Flood Data Services, Inc. (FDSI) will be required for each loan.  If the FZD does not include life-of-loan monitoring by FDSI, a fee for such monitoring will be deducted from the purchase proceeds.

- No more than 3% of the loans may be on properties with 2 to 4 units. 3-4 unit properties will be treated as non-owner occupied properties from both an underwriting perspective and a pricing perspective.

- All loans must be less than 3 months seasoned at time of delivery.

- No more than 15% of the loans delivered may be on Condominium properties.

- No more than 20% of the conventional loans delivered may have LTV ratios greater than or equal to 90%. The SRP for each  conventional loan delivered in excess of this percentage will be subject to a 0.25% reduction, which will be assessed at the end of the commitment period.  Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

- No more than 5% of the loans may be secured by non-owner occupied properties.

*ComUnity Terms Letter*                                    May 22, 1996
*Page 8*

- A minimum of 15% of the loans delivered will be from the Seller's retail production.

- At least 70% of the conventional loans delivered must be loans with Tax & Insurance impounds.  Should Seller fail to meet this minimum requirement, the difference between the actual unpaid principal balance (UPB) delivered with Tax and Insurance impounds and the required 70% UPB shall be subject to a reduction of SRP.  Said reduction shall be calculated by multiplying the difference by 0.25% and will be assessed at the end of the commitment period. Seller further agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

18.   Termination            Either party shall have the right to terminate this agreement on thirty days prior written notice to the other party.


19.   Expiration             Unless accepted earlier, this offer shall expire on May 29, 1996.


The transaction contemplated herein will be subject to the execution of a mutually acceptable flow purchase and sale agreement, the satisfactory completion of an on-site due diligence review of ComUnity by Countrywide and Countrywide's review of ComUnity's financial condition.

If the terms highlighted above are acceptable to ComUnity, please acknowledge below and return an executed copy of this term letter back to us.

We look forward to working with you on this transaction.

Sincerely,

Andrew Gissinger III
Senior Vice President

Countrywide Correspondent Lending Division
155 North Lake Avenue
Mail Stop 5-53
Pasadena, CA 91101

ComUnity Lending

By:    _THONG HONG_

Title:  _CHIEF OPERATING OFFICER_

Date:  _MAY 24, 1996_



Countrywide
CORRESPONDENT LENDING

December 6, 1996

Mr. Thong Hong, Senior Vice President
**ComUnity Lending**
175 Bernal Road, Suite 260
San Jose, CA 95119

RE:    **Flow Commitment**

Dear Mr. Hong:

I am writing to confirm the terms under which Countrywide Home Loans, Inc. ("Countrywide") would enter into an agreement for the purchase of Loans from ComUnity Lending ("ComUnity" or "Seller") under Countrywide's "Assignment of Trade Program" ("AOT Program") or "Direct Trade Program" as described below:

1.   GENERAL

This Flow Commitment is an Amendment to and a part of the Assignment of Trade Flow Commitment Addendum and Direct Trade Flow Commitment Addendum, both dated ___12 / 1 6 99 6 and entered between the parties as of ___12 / 16___, 199_6

Under the AOT program or Direct Trade Program, Seller shall deliver qualifying Mortgage Loans to Countrywide in groups rather than on an individual basis. Each such delivery of a group of Loans shall hereinafter be referred to as a "Delivery." The required minimum aggregate principal balance of a Delivery, as discussed below, shall hereinafter be referred to as the "Minimum Delivery Amount."

2.   PROGRAM DESCRIPTION/DELIVERY OPTIONS:

a.   Assignment of Trade Program

Under the AOT Program, promptly after receipt by Countrywide of each Delivery from Seller and prior to Countrywide's purchase of the Loans comprising such Delivery, Seller shall assign to Countrywide a corresponding trade (a "Third Party Trade") for the forward sale of a mortgage backed security, entered into by Seller with a Countrywide authorized securities dealer. The individual mortgage Loans comprising a Delivery related to a particular Third Party Trade, shall in every way qualify for inclusion into the mortgage backed security which is the subject of the Third Party Trade. The minimum face amount of each Third Party Trade assigned to Countrywide and the corresponding Minimum Delivery Amount shall be $500,000 for Third Party Trades covering FNMA MBS, FHLMC PC, GNMA I and GNMA II securities. After Countrywide accepts assignment of a Third Party Trade, Countrywide shall purchase each mortgage Loan comprising the related Delivery at a purchase price equal to the price to be paid Countrywide for the security as specified on the Third Party Trade, and Countrywide shall further pay Seller a Carry Adjustment and the servicing released premiums as specified below.

b.   Direct Trade Program

Under the Direct Trade Program, Seller shall enter into a trade directly with Countrywide, (a "Direct Trade") rather than assigning a Third Party Trade. Under this delivery option, Loans shall be delivered in a manner similar to the AOT program, except as discussed below:

i)    The Minimum Delivery Amount applicable to each Direct Trade shall be $250,000.

ii)　Individual Loans comprising a Delivery and which are the subject of a Direct Trade may be of different Loans types (e.g. conventional and government, 30 Year and 15 Year, etc.) and may have note rates that would not otherwise qualify all such Loans for inclusion in the same mortgage backed security.

iii)　All Loans comprising a Delivery shall be delivered to and received by Countrywide within the Delivery Period for the related Direct Trade.  Upon entering into a Direct Trade, Seller shall have a mandatory obligation to deliver all Loans comprising the Delivery within such Delivery Period, such that any portion of the Delivery which is not filled within such time frame shall be subject to a mark to market pair-off fee which Seller shall pay to Countrywide, if due.

iv)　Countrywide shall price each individual Loan which is the subject of a Direct Trade separately at a price equal to the bid price obtainable by Countrywide at the time of the Direct Trade, for the forward sale of the mortgage backed security.  To the extent that the individual Loan being priced is a conventional Loan and can be included in either a FNMA MBS or FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types Countrywide is to base its price quote on. The issue date and related forward settlement date of the Applicable Security on which the Loan price shall be based, will be determined by reference to that date during the month on which the corresponding Delivery is to be received by Countrywide pursuant to the Applicable Delivery Date.

3.　Term of Contract:　　　　　　　The term of this commitment shall be six (6)months commencing December 1, 1996,  and ending May 31, 1997.

4.　Loan types:　　　　　　　　　Loans qualifying for delivery hereunder shall be FNMA and FHLMC fixed rate conforming and FHA insured fixed rate and ARM Loans and VA guaranteed fixed rate mortgage Loans underwritten, closed, and delivered pursuant to Countrywide's Correspondent Lending Division's Seller Manual (the "Guide").

5.　Delivery volume:
- A minimum of $10 million and a maximum of $20 million aggregate principal balance per month.
-
- If at the end of the term of this contract Seller has not delivered a minimum of $60 million ($60,000,000), Seller hereby agrees that the difference between the minimum $60,000,000 aggregate principal balance and the actual unpaid aggregate principal balance (UPB) delivered shall be subject to a reduction of SRP.  Said reduction shall be calculated by multiplying the difference between the required $60 million and the actual UPB delivered by 0.25%, and such fee shall be assessed at the end of the commitment period. Seller further agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

6.　Types of trades which may be assigned (under AOT Program) or on which Direct Trade prices will be based:

| FNMA MBS | FHLMC GOLD PC |
|---|---|
| GNMA I | GNMA II |

_ComUnity- Flow Commitment_                                    _December 6, 1996_      3

7.      Definitions:                              "Delivery": the group of Loans to be delivered for purchase
                                                  associated with a particular trade.

                                                  "Delivery Period": The period of time agreed to pursuant to the
                                                  terms of a Trade by which Seller shall be obligated to deliver
                                                  complete mortgage Loans files to Countrywide for the Eligible
                                                  Mortgage Loans covered by the Trade.

                                                  "Net Interest Spread": An annualized rate equal to the
                                                  difference between (x) the note rate on a Loan prior to the
                                                  Applicable Security Settlement month and the Applicable
                                                  Security Coupon yield during the settlement month, and (y)
                                                  0.50% plus the 1 month LIBOR rate at the time the Trade
                                                  covering the Loan is executed by the parties.

                                                  "Carry Adjustment": An adjustment to the FNMA MBS Price,
                                                  FHLMC PC Price, GNMA I Security Price or GNMA II Security
                                                  Price, equal to the Net Interest Spread for the period between
                                                  the Loan Purchase Date and the day prior to the PSA
                                                  settlement date of its Applicable Security. For purposes of this
                                                  calculation, a 365 day year shall be used.

                                                  "Final Delivery Date": The last day of a Delivery Period as
                                                  published in Countrywide's delivery schedules which shall be
                                                  based on the applicable Security Settlement Month.

                                                  "Gross Spread": the difference between the note rate on a Loan
                                                  and the security coupon on its associated trade.

                                                  "Net Spread": the difference between the Gross Spread and
                                                  the Adjusted Guarantee Fee.

                                                  "Base Guarantee Fee": shall be the following as applicable:
                                                      FHLMC PC      =   0.23%
                                                      FNMA MBS      =   0.20%
                                                      FNMA 7 YR     =   0.33%
                                                      FHLMC 7 YR    =   0.30%
                                                      FHLMC 5 YR    =   0.375%
                                                      GNMA I & II   =   0.06%

                                                  "Adjusted Guarantee Fee": shall be the Base Guarantee Fee as
                                                  adjusted for any allowable Buyups or Buydowns of such Base
                                                  Guarantee Fee pursuant to Paragraph 8 below.

                                                  "Base Spread" : 0.25% (25 basis points) for conventional Loans
                                                  and 0.44% (44 basis points) for government Loans.

                                                  "Excess Spread": the excess of Net Spread over the Base
                                                  Spread.

                                                  "Excess Margin": on FHA ARM Loans, the amount of the
                                                  mortgagor's Gross Margin in excess of 2.0%.

*ComUnity- Flow Commitment*                                         *December 6, 1996*      4

"Trade Assignment Date": the date Seller assigns a Trade to Countrywide."

8.   Buyups and Buydowns:      Buyups and Buydowns of the Guarantee Fee will be applied to the extent allowable per FNMA/FHLMC guidelines (currently 20 bps for FNMA and 14.5 bps for FHLMC, however, this may change from time to time at the sole discretion of Countrywide) at the standard multiples as published by FHLMC and FNMA at time of the Trade Assignment Date. The purchase price of a mortgage loan shall be increased by any Buyup credit applied, and decreased by any Buydown cost applied.

9.   Service Released Premium Percentages - <u>Conventional Loans</u>

|                                   | **30 YR** | **15 YR** |
|-----------------------------------|-----------|-----------|
| **Base Price for Non-California Loans** | **1.50%** | **1.25%** |
| **Base Price for California Loans**     | **1.25%** | **1.00%** |

Service Released Premium Percentages - <u>Balloon Loans</u>

|                                   | **7 YR**  | **5 YR**  |
|-----------------------------------|-----------|-----------|
| **Base Price for Non-California Loans** | **0.95%** | **0.80%** |
| **Base Price for California Loans**     | **0.80%** | **0.70%** |

Service Released Premium Percentages - <u>Government Loans</u>

|                                              | **30 YR**  | **15 YR**  |
|----------------------------------------------|------------|------------|
| **Base Price for Non-California FHA fixed rate Loans** | **2.25%**  | **1.80%**  |
| **Base Price for Non-California VA fixed rate Loans**  | **1.875%\*** | **1.425%\*** |
| **Base Price for Non-California FHA ARM Loans**        | **1.60%**  |            |
| **Base Price for California FHA and VA fixed rate Loans** | **2.15%**  | **1.70%**  |
| **Base Price for California VA fixed rate Loans**      | **1.775%\*** | **1.325%\*** |
| **Base Price for California FHA ARM Loans**            | **1.40%**  |            |

Should any Eligible Mortgage Loan delivered hereunder pay off within one hundred twenty (120) days of the date of purchase by Countrywide, the Service Released Premium Percentage on such Loan shall be fully refundable to Countrywide.

*For individual loans delivered solely under this Terms Sheet, for such period as the Service Released Premium Base Price for Non-California VA fixed rate loans is 1.875% for 30-year loans and 1.425% for 15-year loans, and the Service Released Premium Base Price for California VA fixed rate loans is 1.775% for 30-year loans and 1.325% for 15-year loans, Subsection 7.A.(6) of the LPA shall not be in effect.

_ComUnity- Flow Commitment_                                    _December 6, 1996_      5

10.    Premiums for Excess Spread:

Countrywide shall pay the following additional premiums for Excess Spread:

| Loan Type | Premium | Max. Excess Spread |
|---|---|---|
| Conv. 30 year | 4.00 to 1 | 0.25% |
| Conv. 15 year | 3.50 to 1 | 0.25% |
| Balloon 7 year | 2.50 to 1 | 0.25% |
| Balloon 5 year | 2.50 to 1 | 0.25% |
| Gov't 30 year | 4.00 to 1 | 0.375%* |
| Gov't 15 year | 3.50 to 1 | 0.375%* |
| FHA ARM-30 year | 3.00 to 1** | 0.50% |

*Countrywide shall price each Loan to be pooled in a GNMA II security at a price equal to the bid price obtainable by Countrywide, at the time of the Trade, for the forward sale of the mortgage backed security with the highest coupon (the "Applicable Security") into which such Loan can be pooled by Countrywide.

**Must have a corresponding amount of Excess Margin.

11.    Premiums for Excess Margin:

Countrywide shall pay the following additional premium for Excess Margin:

| Loan Type | Premium | Excess Margin |
|---|---|---|
| FHA ARM-30 year | 2.25 to 1 | 0.01%-0.25% |
| FHA ARM-30 year | 1.75 to 1 | 0.26%-0.50% |
| FHA ARM-30 year | 0.50 to 1 | 0.51%-0.75%* |

*  Maximum Gross Margin for which Countrywide shall pay a premium is 2.75%.

To the extent a FHA ARM Loan contains Excess Spread for which a premium is paid pursuant to paragraph 10 above, no premium shall be paid for the corresponding amount of Excess Margin.

Buyer, at its sole discretion, may change or rescind this paragraph 11 relative to payment for Excess Margin on FHA ARM Loans upon thirty (30) days advance notice to Seller.

*ComUnity- Flow Commitment*                              *December 6, 1996*      6

12.   Fees:
- A tax service fee will be charged as provided in the Guide.
- No funding fee will be charged on Loans delivered hereunder.
- The price paid for conventional conforming Loans on condominium properties in California shall be reduced by 0.50% (50 basis points).
- The price paid for Loans on non-owner-occupied properties shall be reduced by 1.5% (150 basis points). 3-4 unit properties will be treated as non-owner occupied properties from both an underwriting perspective and a pricing perspective.

13.   Maximum and Minimum Note Rates:

MAXIMUM NOTE RATE:

The maximum note rate on each of the fixed rate mortgage Loans delivered under this commitment ("Maximum Note Rate") shall be no greater than one percent (1%) above the highest coupon rate of the applicable Agency security trading closest to par (the "Applicable Coupon Rate") during the previous sixty (60) calendar days.

Should the note rate on the mortgage Loans delivered exceed the Maximum Note Rate, then the servicing release premium shall be reduced by the following amounts on any such Loans:

| Max Note Rate above par | Deduction |
| --- | --- |
| 1.01% to 1.50% | 50 basis pts |
| 1.51% to 2.00% | 75 basis pts |
| 2.01% or greater | no SRP shall be paid. |

MINIMUM NOTE RATE:

The minimum note rate  (the "Minimum Note Rate"), relating only to FHA ARM Loans, which shall be deliverable hereunder shall be no lower than .50% below the lowest coupon rate of the applicable Agency security trading closest to par (the Applicable GNMA II Coupon Rate") during the previous sixty (60) calendar days.

If the note rate on a Loan delivered to Countrywide is below the Minimum Note Rate, Countrywide may, at its option, purchase the Loan;  however, Countrywide shall not pay any premium for Excess Margin.

14.   Loan Characteristics:
- Minimum average Loan balance* (calculated on a monthly basis):
  Conv.   $110,000
  Govt.   $120,000

- Geographic Distribution:

  Eligible Mortgage Loans from any state within the continental United States may be delivered, provided, however, that delivery of Loans from the following states shall be limited to the percentage specified below:

  | State | Max. Monthly Delivery |
  |-------|----------------------|
  | CA | 45%* |
  | UT | 30% |
  | OR | 10% |
  | CT, MA, ME, MN, NH, NY, RI, | 5% in aggregate |

- No subsidized Loans (e.g. 235's, 265's, 203K's) or HUD REO Loans may be delivered hereunder.

- No more than 5% of Loans delivered may be buydown Loans.

- No more than 40% of government fixed rate Loans delivered may be VA Loans.  On all VA rate-reduction refinance Loans in soft market areas, Countrywide will require a recertification of value.  Presently these areas are defined as California, Connecticut, Louisiana, Massachusetts, New York and New Jersey, Texas and Oregon. The SRP for each VA Loan delivered in excess of this percentage will be subject to a 0.25% reduction, which will be assessed at the end of the commitment period. Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

- No more than 25% of the Loans delivered during this commitment period may be FHA ARM Loans.  The SRP for each ARM Loan delivered in excess of this percentage will be subject to a 0.375% reduction, which will be assessed at the end of the commitment period.   Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

- A flood zone determination (FZD) for each Loan delivered under this Agreement is required.  The FZD must conform with all requirements of the National Flood Insurance Reform Act of 1994 and be prepared by a provider approved by Countrywide.  Additionally, life-of-loan monitoring by Flood Data Services, Inc. (FDSI) will be required for each Loan.  If the FZD does not include life-of-loan monitoring by FDSI, a fee for such monitoring will be deducted from the purchase proceeds.

- No more than 3% of the Loans may be on properties with 2 to 4 units.

- All Loans must be less than 3 months seasoned at time of delivery.

- No more than 15% of the Loans delivered may be on Condominium properties.

- Loan-to-Value (LTV) Ratio: Including House America® product, no more than 20% of the conventional loans delivered may have LTV ratios equal to or greater than 90%. The SRP for each conventional loan delivered in excess of this percentage will be subject to a 0.25% reduction, which will be assessed at the end of the commitment period.   Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

  No more than 2% of the conventional loans delivered may be on House America® product, as described in the Guide. The SRP for each House America® loan delivered in excess of this percentage will be subject to a 0.25% reduction, which will be assessed at the end of the commitment period.   Seller agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

  However, should Seller provide written evidence that its actual origination of House America® loans during this commitment period is in excess of the above referenced maximum 2%, such fee shall not be imposed, provided Seller's percentage of deliveries of House America® loans do not exceed Seller's actual percent of House America® originations;  should the percentage of House America® loans delivered to Buyer exceed Seller's actual originations, the difference will be assessed the above referenced fee.

- No more than 5% of the Loans may be secured by non-owner occupied properties.

- At least 70% of the conventional loans delivered must be loans with Tax & Insurance impounds. Should Seller fail to meet this minimum requirement, the difference between the actual unpaid principal balance (UPB) delivered with Tax and Insurance impounds and the required 70% UPB shall be subject to a reduction of SRP. Said reduction shall be calculated by multiplying the difference by 0.25% and will be assessed at the end of the commitment period. Seller further agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

- On Eligible Mortgage conventional Loans assigned to fill FHLMC trades and having loan-to-value ratios greater than 80.00%, Buyer requires Seller to deliver such loans with FICO scores of 620 or above. A price reduction will be made for any Eligible Mortgage conventional Loan assigned to fill FHLMC trades with loan-to-value ratios greater than 80.00% and FICO score less than 620. The price reduction will be 2.75% of the unpaid principal balance of the underlying loan at the time of purchase. Seller agrees to provide Buyer a schedule, at the time of Assignment, that will identify loan-to-value and FICO scores on a loan level basis for each trade.

- A minimum of 15% of the Loans delivered must be from the Seller's retail production.

15.   Termination                Either party shall have the right to terminate this agreement on thirty days prior written notice to the other party.

16.   Expiration                 Unless accepted earlier, this offer shall expire on December 13, 1996.

The transaction contemplated herein will be subject to the execution of a mutually acceptable flow purchase and sale agreement, the satisfactory completion of an on-site due diligence review of ComUnity by Countrywide and Countrywide's review of ComUnity's financial condition.

If these terms are acceptable to ComUnity, please acknowledge below and return an executed copy of this term letter back to us.

We look forward to working with you on this transaction.

Sincerely,

Andrew Gissinger III
Senior Vice President

Countrywide Correspondent Lending Division
155 North Lake Avenue
Mail Stop 5-53
Pasadena, CA 91101

Accepted:
**ComUnity Lending**

By: _____

Name:  Thong Hong

Title:   Chief Operating Officer

Date:   December 6, 1996

## DIREC: TRADE FLOW COMMITMENT ADDEND_M

This Addendum ("Direct Trade Flow Addendum" or "Direct Trade Commitment") constitutes an addendum to that Loan Purchase Agreement (the "LPA") dated July 28, 1994, by and between Countrywide Home Loans, Inc., (fka Countrywide Funding Corporation) (Countrywide" or "Buyer"), a New York Corporation, and ComUnity Lending ("Seller"). This Direct Trade Flow Addendum is for the purpose of setting forth the obligations of the Seller to Countrywide, related to Seller's delivery of Loans to Countrywide under Countrywide's Direct Trade program, ("Direct Trade Program") which is further detailed in the Flow Commitment (the "Flow Commitment") attached hereto as Exhibit A, dated December 6, 1996, and incorporated herein by reference. This Direct Trade Flow Addendum shall modify, amend, and form a part of the terms of the LPA. All capitalized terms contained herein which are not defined shall have the same meaning as in the LPA or in the Flow Commitment. In the event of any conflict between the terms and conditions of the LPA and this Direct Trade Flow Addendum as it pertains to delivery of Loans under the Direct Trade Program, the terms and conditions of this Direct Trade Flow Addendum shall prevail. All other provisions of the LPA shall remain unchanged and be in full force and effect.

## I. COMMITMENT TO PURCHASE LOANS

Buyer hereby commits to purchase from Seller first lien Mortgage Loans during the term of this Commitment which are secured by residential properties falling within the product Loan types, meeting the other criteria of, and delivered in accordance with, the terms and conditions set forth in this Direct Trade Flow Addendum, the Flow Commitment, the LPA and the Guide ("Eligible Mortgage Loans").

## II. DEFINITIONS

**A.** "Associated Security" shall mean that mortgage backed security which Countrywide shall designate for each Mortgage Loan covered by a Direct Trade as provided in section IV herein.

**B.** "Business Day" shall mean any day other than a Saturday, Sunday or a day on which commercial banks in Los Angeles, California are authorized or required by law or executive order to close.

**C.** "Carry Adjustment": An adjustment to the FNMA MBS Price, FHLMC PC Price, GNMA I Security Price or GNMA II Security Price, equal to the Net Interest Spread for the period between the Loan purchase date and the day prior to the PSA settlement date of its Applicable Security. For purposes of this calculation, a 365 day year shall be used.

**D.** "Delivery" shall mean the delivery by Seller to Countrywide of a group of Eligible Mortgage Loans which are to be delivered by Seller to Countrywide to satisfy the Seller's delivery obligations in conjunction with a Direct Trade.

**E.** "Delivery Notice" shall mean the form attached to this Direct Trade Flow Addendum as Exhibit B, representing Seller's notification to Buyer of a Delivery to be made under this Direct Trade Flow Addendum.

**F.** "Direct Trade" shall mean a mandatory commitment entered into directly between Countrywide and Seller whereby Seller agrees to sell and Countrywide agrees to purchase [a specific group of] Eligible Mortgage Loans at a specific purchase price, and which further provides that all such Eligible Mortgage Loans are to be delivered by Seller to Countrywide on or prior to the Mandatory File Receipt Date.

**G.** "Direct Trade Date" shall mean the date that a Direct Trade was entered into between Countrywide and Seller.

**H.** "Eligible Mortgage Loans" shall mean Mortgage Loans which are eligible for pooling into their designated Associated Security and that meet all of the criteria specified herein, the Flow Commitment, the LPA and the Guide.

**I.** "Final Delivery Date" shall mean the applicable dates reflected in the column entitled "Final Delivery Date" set forth in Exhibit C attached to this Direct Trade Flow Addendum.

J.    "FHLMC PC" shall mean a mortgage-backed instrument guaranteed by the Federal Home Loan Mortgage Corporation (FHLMC) that evidences an ownership interest in a pool of Mortgage Loans.

K.    "FNMA MBS" shall mean a mortgage-backed security guaranteed by Federal National Mortgage Association (FNMA) and representing an ownership interest in a pool of Mortgage Loans.

L.    "Guide" shall mean Countrywide's Correspondent Lending Division Loan Purchase Program Seller's Manual.

M.    "Mandatory File Receipt Date" shall mean that date which is five business days subsequent to the Direct Trade Date, provided however that if the fifth such day is a weekend day, the Mandatory File Receipt Date shall be the  business day immediately following such weekend date.

N.    "Minimum Delivery Amount" shall mean the minimum aggregate principal balance of Eligible Mortgage Loans to be covered by a specific Direct Trade.

O.    "Mortgage Loan" shall mean an obligation evidenced by a promissory note secured by a first lien upon a residential property and the servicing rights, titles and interests therein and thereto, together with the Mortgage Loan File, escrow accounts and all records pertaining to such Loan.

P.    "Mortgage Loan Files" shall mean all of those documents required to have been obtained or produced pursuant to the Guide, this Direct Trade Flow Addendum and the requirements of FHLMC, FNMA, GNMA, FHA or VA as applicable, and shall meet all of the criteria specified herein, the Flow Commitment, the LPA and the Guide.

Q.    "Mortgage Loan Purchase Price" shall have the meaning set forth in Section IV of this Direct Trade Flow Addendum.

R.    "Net Interest Spread": An annualized rate equal to the difference between (x) the note rate on a Loan prior to the Applicable Security Settlement month and the Applicable Security Coupon yield during the settlement month, and (y) 0.50% plus the 1 month LIBOR rate at the time the Trade covering the Loan is executed by the parties.

S.    "Pool Cut-Off Date" shall mean the applicable date reflected in the column entitled "Pool Cut-Off Date" set forth in Exhibit C attached to this Direct Trade Flow Addendum.

T.    "Purchase Date" shall mean the actual date that Buyer pays the Purchase Price for each Eligible Mortgage Loan following the Receipt Date for such Eligible Mortgage Loan.

U.    "Purchase Voucher" shall mean the Correspondent Lending Division Purchase Voucher as described in the Guide.

V.    "Receipt Date" shall mean the date of receipt by Buyer of a complete Mortgage Loan File for each Eligible Mortgage Loan.

W.    "Rejected Loan" shall have the meaning specified in Section VIII.A. of this Direct Trade Flow Addendum.

X.    "Settlement Date" shall mean the applicable date reflected in the column entitled "Settlement Date" set forth on Exhibit C attached to this Direct Trade Flow Addendum.

Y.    "Shortfall Amount" shall mean the amount by which the Delivery amount is less than the Minimum Delivery Amount.

Z.    "Suspension Cure Date" shall mean that date which is the earlier of the "Pool Cutoff Date" or that date which is five (5) calendar days subsequent to the date Countrywide gives Seller  notice that

2

a Loan delivered by Seller to Countrywide contains a suspense making the Loan not eligible for purchase by Countrywide hereunder.

**AA.**   "Tolerance" shall mean 2.50% of the applicable Loan amount for which Seller has substituted an Eligible Mortgage Loan.

## III.   DIRECT TRADES AND DELIVERIES

Seller agrees to enter into Direct Trades and make corresponding Deliveries of Eligible Mortgage Loans during each month during the term of this Direct Trade Commitment, which Direct Trades and related Deliveries shall comply with the following provisions:

**A.**   The aggregate principle balance of each Direct Trade and corresponding Delivery shall not be less than the Minimum Delivery Amount.

**B.**   Prior to entering into a Direct Trade, Seller shall send to Countrywide via telefax a Delivery Notice describing the Eligible Mortgage Loans comprising the Delivery which is the subject of the Direct Trade.

**C.**   The complete Mortgage Loan File on each of the Eligible Mortgage Loans which comprise a Delivery and which are the subject of a Direct Trade shall be delivered to, and received by Countrywide no later than the Mandatory File Receipt Date.

**D.**   Each Eligible Mortgage Loan delivered in conjunction with a Direct Trade shall qualify in every respect for inclusion in the Associated Security designated for such Loan as discussed in Section IV. herein

**E.**   Countrywide's obligation to purchase an Eligible Mortgage Loan shall be contingent on (1) Seller's concurrent delivery to Buyer of complete Mortgage Loan Files on all of the Eligible Mortgage Loans comprising the Delivery by the Mandatory File Receipt Date, and (2) Countrywide's review and acceptance of the Mortgage Loan File, which acceptance shall be evidenced by Buyer's payment to Seller of the Mortgage Loan Purchase Price for such Eligible Mortgage Loan as set forth in section IV. below; provided however that such review and acceptance shall not in any way diminish Seller's obligations, representations or warranties, or Buyer's rights, under this Direct Trade Flow Addendum or the LPA.

**F.**   Seller agrees to deliver to Buyer under the combined AOT and Direct Trade Programs an aggregate minimum amount of $10 Million ($10,000,000) and a maximum amount of $20 Million ($20,000,000) in Deliveries during each calendar month during the term of this Agreement.  Should Seller desire to deliver in excess of $20 Million ($20,000,000) in Deliveries in any one month, such excess Deliveries shall require the prior written approval of Buyer.  Seller further agrees that Buyer shall not deliver more than 10% of the total monthly delivery volume for purchase on any one business day.

•   If at the end of the term of this contract Seller has not delivered a minimum of $60 million ($60,000,000), Seller hereby agrees that the difference between the minimum $60,000,000 aggregate principal balance and the actual unpaid aggregate principal balance (UPB) delivered shall be subject to a reduction of SRP. Said reduction shall be calculated by multiplying the difference between the required $60 million and the actual UPB delivered by 0.25%, and such fee shall be assessed at the end of the commitment period. Seller further agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

## IV.   PURCHASE PRICE/SERVICING RELEASED PREMIUM

**A.**   The purchase price (the "Mortgage Loan Purchase Price") to be paid by Countrywide on each Eligible Mortgage Loan delivered which is covered by a Direct Trade will be equal to the product

3

of (x) the unpaid principal balance of such Eligible Mortgage Loan on the Purchase Date, multiplied by (y) the percentage price ("Purchase Price Percentage") offered by Countrywide to Seller, and accepted by Seller for such Eligible Mortgage Loan at the time the Direct Trade was entered into.

1.  The Purchase Price Percentage which Countrywide shall offer for each Eligible Mortgage Loan shall be equal to the bid price which Countrywide believes it can obtain at the time of the Direct Trade for the forward sale of the Applicable Security (defined below) designated by Countrywide for each such Eligible Mortgage Loan.

2.  The "Applicable Security" designated by Countrywide for each Eligible Mortgage Loan shall be that mortgage backed security with the highest coupon rate of interest into which the Eligible Mortgage Loan can be pooled by Countrywide. The coupon rate of interest of the Applicable Security (the "Applicable Security Coupon Rate") shall be in even .50% increments.

3.  The Applicable Security shall be either a FNMA MBS or FHLMC PC Gold security for conventional fixed rate Loans, a GNMA I or GNMA II security for FHA and VA Loans pursuant to GNMA, PSA and Countrywide guidelines, as applicable.

4.  The Issue Date and related PSA settlement date of the Applicable Security shall be determined by reference to the Mandatory File Receipt Date applicable to the Direct Trade and the Final Delivery Dates specified in Exhibit C attached hereto.

5.  Notwithstanding the preceding, if any Eligible Mortgage Loan can be pooled into either a FNMA MBS security or a FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types Countrywide is to designate as the Applicable Security.

B.  The Mortgage Loan Purchase Price shall be further adjusted by any Carry Adjustment, Buyup or Buydown fees, impound balances, accrued interest and other adjustments or fees as provided for in the Flow Commitment or the Guide.

C.  In addition to the payment of the Mortgage Loan Purchase Price, adjusted as provided for in paragraphs IV.A. and IV.B. above, Countrywide shall pay Seller a servicing released premium ("Servicing Released Premium") on each Eligible Mortgage Loan purchased which shall be calculated by multiplying the unpaid principal balance of such Eligible Mortgage Loan on the Purchase Date by the applicable Servicing Released Premium percentage provided for in the Flow Commitment.

V.  **LOAN CHARACTERISTICS**

Seller represents that the characteristics of all Eligible Mortgage Loans to be delivered by Seller hereunder shall fully conform to the required characteristics and parameters set forth in this Addendum, the Flow Commitment and the Guide.

VI.  **UNDERWRITING**

Each Loan purchased pursuant to the Direct Trade Program shall be underwritten by Seller in accordance with the underwriting guidelines and the lending requirements set forth in the Guide, the requirements of FHLMC, FNMA, GNMA, FHA or VA, as applicable, and the guidelines of any applicable mortgage insurance companies. Seller shall be responsible for ensuring that Eligible Mortgage Loans submitted to Buyer comply with all terms and conditions of this Direct Trade Flow Addendum and the aforementioned requirements and guidelines. Conventional Mortgage Loans that do not conform to the standard program parameters or underwriting guidelines of FNMA or FHLMC, but for which Seller received a waiver from FNMA or FHLMC, as applicable, may not be delivered hereunder unless Seller has obtained the prior written consent of Buyer prior to the delivery of such Loans to Buyer.

4

Buyer shall have the right, but not the obligation, to underwrite any Eligible Mortgage Loan submitted for purchase pursuant to this Direct Trade Flow Addendum, the LPA and the Guide or otherwise ensure that any Eligible Mortgage Loan submitted for purchase complies with all of the terms and conditions of this Direct Trade Flow Addendum, the LPA and the Guide; provided that the existence of this right shall not affect in any way Seller's obligations hereunder, including without limitation, Seller's repurchase obligations, and Seller's hold harmless obligations under the LPA.

**VII.**   **TIMING OF DELIVERIES/PAIR OFF FEES**

Seller agrees to deliver all Eligible Mortgage Loans to Countrywide on or before the Mandatory File Receipt Date.

In the event that Seller fails to deliver an Eligible Mortgage Loan applicable to a Direct Trade by the related Mandatory File Receipt Date established for that Direct Trade, Seller shall pay Countrywide a mark to market pair-off fee (the "Pair-Off Fee") which shall be calculated by multiplying the principal balance of the Eligible Mortgage Loan(s) not delivered by a percentage equal to the sum of the following:

1.   An administrative fee equal to the greater of 0.125% of the Shortfall Amount or $100; plus

2.   The positive difference, if any, between (x) the bid price (expressed as a percent) obtainable by Countrywide on Mandatory File Receipt Date for the Associated Security which was designated for the Eligible Mortgage Loan, and (y) the price offered by Countrywide, and accepted by Seller for such non-delivered Loan pursuant to the Direct Trade.

**VIII.**   **REJECTION OF MORTGAGE LOANS**

A.   In the event Seller delivers a Mortgage Loan on or prior to the Mandatory File Receipt Date and Buyer rejects such Mortgage Loan (a "Rejected Loan") because any of the documentation relating to such Loan, or Seller, as applicable fails to satisfy or breaches any of the criteria, requirements, representations or warranties set forth in this Direct Trade Flow Addendum, the Term Sheet, the LPA or the Guide, then Seller shall have the right to cure the deficiency giving rise to the rejection or to substitute an Eligible Mortgage Loan, provided that such cure is completed, and in the case of a substituted Loan, the Eligible Mortgage Loan is delivered, reviewed and accepted by Buyer prior to the Suspension Cure Date.

B.   In the event Seller fails to cure the deficiency giving rise to a Rejected Loan prior to the Suspension Cure Date, or to substitute an acceptable Eligible Mortgage Loan which is reviewed and accepted by Buyer by the Suspension Cure Date, the Buyer at its sole option may send such Rejected Loan back to Seller or allow Seller additional time to cure the reason giving rise to the rejection.  In any event, Seller shall pay Buyer immediately upon receipt of notice from Buyer:

1.   The Administrative fee, plus:

2.   the amount of any pair-off loss if a Rejected Loan is sent back to Seller and no substitute Eligible Mortgage Loan is received and accepted by Buyer prior to the applicable Suspension Cure Date.  Such pair-off loss will be calculated by multiplying the unpaid principal balance of the Rejected Loan by the positive difference, if any, between (a) the bid price (expressed as a percentage) obtainable by Countrywide for the related Associated Security on the date the Rejected Loan is sent back to Seller, and (b) the price offered by Countrywide and accepted by Seller for such Rejected Loan,  pursuant to the Direct Trade, plus;

3.   An interest fee calculated at the Applicable Security Coupon Rate associated with the Rejected Loan and multiplied by the aggregate unpaid principal balance of such Rejected Loan for the number of days between the Suspension Cure Date and either the date of the pair-off or the date that a substitute Eligible Mortgage Loan submitted to and accepted by Buyer for purchase is purchased.

5

IX.   **REPURCHASE OF MORTGAGE LOANS**

A.   In the event that Buyer, FNMA, FHLMC, FHA or VA as applicable, reject a Mortgage Loan prior to the date such Loan is sold to them or pooled into a mortgage backed security, and Buyer has purchased the rejected Mortgage Loan from Seller, then Seller shall repurchase such Mortgage Loan, and Buyer shall have all other remedies as set forth in the LPA. In addition, Seller shall pay Buyer the applicable amounts calculated pursuant to Paragraph VIIIB above.

B.   In each of the cases set forth in Paragraphs VIIIA, VIIIB and IX.A above, Seller shall also indemnify and hold Buyer harmless from and against all costs, expenses and other charges incurred by the Buyer as provided for in the LPA and Guide.

X.   **COMMITMENT PERIOD**

The term of this Direct Trade Addendum will extend from December 1, 1996, to May 31, 1997, and on May 31, 1997, this Direct Trade Addendum shall terminate; however, this Direct Trade Addendum may be extended by the written consent of both Buyer and Seller.

XI.   **TERMINATION**

Notwithstanding the commitment period specified in Section X above, this Direct Trade Flow Addendum may be terminated by the mutual consent of Buyer and Seller or upon the giving of 30 days notice by either party to the other. Notice shall be effective the earliest of the date (i) received, (ii) four (4) days after being sent by certified or registered U.S. Mail, or (iii) two (2) days after being delivered by an overnight courier. Should Seller breach any of the terms or conditions of this Direct Trade Flow Addendum, the LPA, the Flow Commitment, or the Guide, Buyer may terminate this Direct Trade Flow Addendum immediately without notice to Seller. Termination of this Direct Trade Flow Addendum shall not in any way affect either Seller's or Buyer's obligations, representations, warranties or indemnifications with respect to Eligible Mortgage Loans already purchased by, or Direct Trades already entered into by Seller and Buyer; provided, however, that Buyer may immediately terminate its obligations hereunder without notice and immediately cancel any unfilled Direct Trades and/or return any Eligible Mortgage Loans not purchased back to Seller, and Seller shall accept such re-assignment or return, as applicable, if Buyer reasonably determines that there has been any non-performance, deception, fraud, concealment or material misrepresentation by Seller in performing any of its duties, obligations, responsibilities or actions undertaken in connection with this Direct Trade Flow Addendum including but not limited to Seller's:

(i)   origination or servicing of the Eligible Mortgage Loans;

(ii)   delivery of any Eligible Mortgage Loan to Buyer;

(iii)   making of any representation or warranty;

(iv)   performance of its repurchase obligations;

(v)   adjudication as a bankrupt, insolvency or application for or consent to the appointment of a receiver, trustee, liquidator, custodian or similar official for itself or any of its properties or assets;

(vi)   assignment or attempt to assign any of its rights or obligations under this Direct Trade Flow Addendum without the prior written consent of Buyer;

(vii)   breach any of its obligations under this Direct Trade Flow Addendum;

(viii)   failure to be a qualified originator of Eligible Mortgage Loans in any jurisdiction where mortgaged property securing any Eligible Mortgage Loan is located.

6

In such event, Buyer shall be entitled to avail itself of all remedies as set forth in the Direct Trade Flow Addendum, the LPA and the Guide.

Additionally, Buyer may terminate this Direct Trade Flow Addendum with thirty (30) days written notice to Seller should any Federal or State law be enacted which adversely affects the value of the servicing rights being acquired, including, but not limited to, changes in law impacting interest on escrow balance requirements.

## XII.   FINANCIAL STATEMENTS

Seller shall provide Buyer with interim financial statements and other information at least quarterly within sixty (60) days following the end of each quarter.   Seller shall provide audited financial statements certified by an independent certified public accountant within one hundred (100) days following the end of Seller's fiscal year.

## XIII.   RIGHT OF OFFSET AND DELIVERY OF PAYMENTS

A.   In addition to any rights now or hereafter granted under this Direct Trade Flow Addendum, the LPA or Guide by applicable law or otherwise, and not by way of limitation of any such rights, Buyer is hereby authorized at any time or from time to time, without presentment, demand, protest or other notice of any kind to Seller or to any other person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all amounts at any time owing by Buyer to or for the credit or the account of Seller against and on account of the obligations and liabilities of Seller to Buyer under this Direct Trade Flow Addendum, irrespective of whether or not Buyer shall have made any demand therefor.

B.   Except as expressly otherwise set forth in this Direct Trade Flow Addendum, the LPA or Guide, any amounts due from Seller to Buyer pursuant to any provision of this Direct Trade Flow Addendum, the LPA or Guide shall be remitted by Seller to Buyer no later than five (5) Business Days from Seller's receipt of notice from Buyer of the amounts due hereunder.

## XIV.   EXHIBITS

All exhibits attached hereto or referred to in this Direct Trade Flow Addendum are incorporated by reference into this Direct Trade Flow Addendum and made a part hereof.

## XV.   ASSIGNMENT

Seller may not assign its rights or obligations under this Direct Trade Flow Addendum without the prior written consent of Buyer.  This Direct Trade Flow Addendum shall be binding and inure to the benefit of Buyer's successors and assigns.

**COUNTRYWIDE FUNDING CORPORATION**

By:   Andrew Gissinger III
        Senior Vice President

Date:   December 10, 1996

**ComUnity Lending**

By:   THONG HONG

Date:   DECEMBER 16, 1996

7

DIRECT TRADE ADDENDUM
EXHIBITS


A.      Flow Commitment

B.      Delivery Notice

C.      Delivery Date Schedule

## ASSIGNMENT OF TRADE FLOW COMMITMENT ADDENDUM

This Addendum ("AOT Flow Addendum") constitutes an addendum to that Loan Purchase Agreement (the "LPA") dated July 28, 1994 by and between Countrywide Home Loans, Inc., (fka Countrywide Funding Corporation) ("Countrywide" or "Buyer"), a New York Corporation, and ComUnity Lending ("Seller"). This AOT Flow Addendum sets forth the obligations of the Seller to Countrywide relating to Seller's delivery of Loans to Countrywide under Countrywide's Assignment of Trade program, ("AOT Program") which is further detailed in the Flow Commitment ("Flow Commitment") attached hereto as Exhibit A, dated December 6, 1996, and incorporated herein by reference. This AOT Flow Addendum shall modify, amend, and form a part of the terms of the LPA. All capitalized terms contained herein which are not defined shall have the same meaning as in the LPA, or in the Flow Commitment. In the event of any conflict between the terms and conditions of the LPA and this AOT Flow Addendum as it pertains to delivery of Loans under the AOT Program, the terms and conditions of this AOT Flow Addendum shall prevail. All other provisions of the LPA shall remain unchanged and be in full force and effect.

**I.     COMMITMENT TO PURCHASE LOANS AND ACCEPTANCE OF ASSIGNMENTS OF TRADE**

Buyer hereby commits to purchase from Seller first lien mortgage Loans secured by residential properties (the "Mortgage Loans") falling within the product Loan types, meeting the other criteria of, and delivered in accordance with, the terms and conditions set forth in this AOT Flow Addendum, the Flow Commitment, the LPA and the Guide.   Countrywide also commits to accept from Seller Assignments of Trade, subject to all of the terms and conditions set forth in this AOT Flow Addendum.

**II.    DEFINITIONS**

**A.** "Approved Investor" shall mean a securities dealer listed on Exhibit B attached to this AOT Flow Addendum (which list may be revised by Buyer from time to time) or a securities dealer otherwise approved by Buyer in writing, which approval may be withheld in Buyer's sole discretion.

**B.** "Assignment Notification" shall mean a form of assignment of a Trade fully completed and executed by Seller substantially in the form of Exhibit C attached to this AOT Flow Addendum.

**C.** "Business Day" shall mean any day other than a Saturday, Sunday or a day on which commercial banks in Los Angeles, California are authorized or required by law or executive order to close.

**D.** "Carry Adjustment":  An adjustment to the FNMA MBS Price, FHLMC PC Price, GNMA I Security Price or GNMA II Security Price, equal to the Net Interest Spread for the period between the Loan Purchase Date and the day prior to the PSA settlement date of its Applicable Security. For purposes of this calculation, a 365 day year shall be used.

**E.** "Delivery" shall have the meaning set forth in Section III.A. of this AOT Flow Addendum.

**F.** "Delivery Date Schedule" shall mean the schedule attached to this AOT Flow Addendum as Exhibit E.

**G.** "Delivery Notice" shall mean the form attached to this AOT Flow Addendum as Exhibit D, representing Seller's notification to Buyer of a Delivery to be made under this AOT Flow Addendum.

**H.** "Eligible Mortgage Loans" shall have the meaning specified in Section III.A. of this AOT Flow Addendum.

**I.** "Final Delivery Date" shall mean the applicable dates reflected in the column entitled "Final Delivery Date" set forth in Exhibit E attached to this AOT Flow Addendum.

J.    "FHLMC PC" shall mean a mortgage-backed instrument guaranteed by the Federal Home Loan Mortgage Corporation (FHLMC) that evidences an ownership interest in a pool of Mortgage Loans.

K.    "FNMA MBS" shall mean a mortgage-backed security guaranteed by the Federal National Mortgage Association (FNMA) and representing an ownership interest in a pool of Mortgage Loans.

L.    "Guide" shall mean Countrywide's Correspondent Lending Division Loan Purchase Program Seller's Manual.

M.    "Minimum Delivery Amount" shall mean the minimum aggregate principal balance of the Eligible Mortgage Loans to be covered by a specific Trade, plus or minus the Tolerance.

N.    "Mortgage Loan" shall mean an obligation evidenced by a promissory note secured by a first lien upon a residential property and the servicing rights, titles and interests therein and thereto, together with the Mortgage Loan File, escrow accounts and all records pertaining to such Loan.

O.    "Mortgage Loan Files" shall mean all of those documents required to have been obtained or produced pursuant to the Guide and the requirements of FHLMC, FNMA, GNMA, FHA or VA as applicable.

P.    "Mortgage Loan Purchase Price" shall have the meaning set forth in Section V of this AOT Flow Addendum.

Q.    "Net Interest Spread": An annualized rate equal to the difference between (x) the note rate on a Loan prior to the Applicable Security Settlement month and the Applicable Security Coupon yield during the settlement month, and (y) 0.50% plus the 1 month LIBOR rate at the time the Trade covering the Loan is executed by the parties.

R.    "Pool Cut-Off Date" shall mean the applicable date reflected in the column entitled "Pool Cut-Off Date" set forth in Exhibit E attached to this AOT Flow Addendum.

S.    "Purchase Date" shall mean the actual date that Buyer pays the Purchase Price for each Eligible Mortgage Loan following the Receipt Date for such Eligible Mortgage Loan.

T.    "Purchase Voucher" shall mean the Correspondent Lending Division Purchase Voucher as described in the Guide.

U.    "Receipt Date" shall mean the date of receipt by Buyer of a complete Mortgage Loan File for each Eligible Mortgage Loan.

V.    "Rejected Loan" shall have the meaning specified in Section IX.A. of this AOT Flow Addendum.

W.    "Settlement Date" shall mean the applicable date reflected in the column entitled "Settlement Date" set forth on Exhibit E attached to this AOT Flow Addendum.

X.    "Tolerance" shall mean 1.00% of the applicable Trade amount or such other amount as specified by the Public Securities Association ("PSA").

Y.    "Shortfall Amount" shall mean the amount by which the Delivery Amount is less than the Minimum Delivery Amount.

Z.    "Trade" shall mean an obligation to deliver a Mortgage-Backed Security or a Participation Certificate to an Approved Investor at a particular Trade Price on the Settlement Date for such Trade.

2

**AA.**    "Trade Price" shall mean the negotiated price with an Approved Investor for the delivery of a mortgage-backed security or a participation certificate.


## III.    MORTGAGE LOAN DELIVERIES

**A.**    Seller shall deliver from time to time to Buyer under the terms of this AOT Flow Addendum Mortgage Loans for purchase that are eligible for pooling into the mortgage-backed securities which are the subject of a corresponding Trade and that meet all other criteria specified herein and in the Flow Commitment, the LPA and the Guide ("Eligible Mortgage Loans"). The aggregate unpaid principal balance of Eligible Mortgage Loans delivered by Seller to Buyer from time to time in conjunction with the assignment of a particular Trade (a "Delivery") shall meet the following criteria:

   **1.**    The aggregate unpaid principal balance of each Delivery shall be equal to the face amount of the corresponding Trade to be assigned by Seller to Buyer in conjunction with the Delivery plus or minus the Tolerance; and

   **2.**    The aggregate unpaid principal balance of each Delivery shall, in no event, be less than $250,000 for Deliveries relating to Trades of FNMA MBS, FHLMC PC Gold, GNMA I and GNMA II securities.

**B.**    All Eligible Mortgage Loans comprising a Delivery associated with a particular Trade shall qualify in every respect for inclusion in the security covered by the applicable Trade. Buyer shall have full discretion as to whether to retain or sell any Eligible Mortgage Loan or to use any Eligible Mortgage Loan to fill the corresponding Trade.

**C.**    Buyer's obligation to purchase an Eligible Mortgage Loan shall be contingent on (1) Seller's concurrent delivery to Buyer of (a) evidence of the corresponding Trade and (b) all other Eligible Mortgage Loans comprising the Delivery, the aggregate principal balances of which, together with the subject Eligible Mortgage Loan, correspond to the dollar amount of the corresponding Trade as provided in Section III.A. above and in Section IV hereof, (2) the assignment of the applicable Trade by Seller to Buyer and the acceptance of such assignment by Buyer as evidenced by the execution of the Assignment Notification by Seller, Buyer and the Approved Investor and (3) Buyer's review and acceptance of the Mortgage Loan File, which acceptance shall be evidenced by Buyer's payment to Seller of the Purchase Price for such Mortgage Loans as set forth in Section V below; provided, however, that such review and acceptance shall not in any way diminish Seller's obligations, representations or warranties, or Buyer's rights, under this AOT Flow Addendum or the LPA.

**D.**    Seller agrees to deliver to Buyer under both AOT and Direct Trade Programs an aggregate minimum amount of $10 Million ($10,000,000) and a maximum amount of $20 Million ($20,000,000) in Deliveries during each calendar month during the term of this Agreement. Should Seller desire to deliver in excess of $20 Million ($20,000,000) in Deliveries in any one month, such excess Deliveries shall require the prior written approval of Buyer. Seller further agrees that Buyer shall not deliver more than 10% of the total monthly delivery volume for purchase on any one business day.

•    If at the end of the term of this contract Seller has not delivered a minimum of $60 million ($60,000,000), Seller hereby agrees that the difference between the minimum $60,000,000 aggregate principal balance and the actual unpaid aggregate principal balance (UPB) delivered shall be subject to a reduction of SRP. Said reduction shall be calculated by multiplying the difference between the required $60 million and the actual UPB delivered by 0.25%, and such fee shall be assessed at the end of the commitment period. Seller further agrees to immediately pay the amount billed upon receipt of written invoice from Countrywide.

3

E. Seller shall send to Buyer the Delivery Notice via telefax at least one Business Day in advance of the day Seller intends to deliver the Eligible Mortgage Loans comprising the Delivery. A complete Mortgage Loan File containing each of the documents required pursuant to the Guide shall be delivered for each Eligible Mortgage Loan. The Mortgage Loan Files shall be accompanied by a fully completed copy of the Purchase Voucher for each of the Mortgage Loans to be purchased. On the same day the Delivery Notice is received by Buyer, Seller shall send, by overnight mail, the complete Mortgage Loan Files and the original notes, with bailee letters from Seller's warehouse bank attached, if applicable, and wiring instructions such that Buyer receives them on the first Business Day following such telefax notification.

## IV. COMMITMENT TO ACCEPT ASSIGNMENTS OF TRADE

Buyer hereby commits to accept assignments of Trades from Seller in conjunction with Deliveries to be made by Seller hereunder under the following terms and conditions:

A. The Trade must have been issued by and subject to closing with an Approved Investor; the Trade must be for the forward sale of an eligible security as specified in the Flow Commitment; and the Trade must be for a face amount of no less than $500,000 for trades covering FNMA MBS, FHLMC PC Gold , GNMA I GNMA II securities. Seller shall negotiate the Trade Price with the Approved Investor, thereby assuming any market gain or loss with regard to the Eligible Mortgage Loans associated with the Trade.

B. Buyer's obligation to accept assignment of the Trade is contingent upon Buyer having received from Seller all of the Eligible Mortgage Loans necessary to form the security covered by the Trade on or prior to the Final Delivery Date. Each of the Mortgage Loans shall be fully eligible for inclusion within the security covered by the Trade, and the aggregate of the unpaid principal balances of such Eligible Mortgage Loans received by Buyer in the Delivery associated with the Trade shall be not less nor more than the face amount of the Trade, plus or minus the Tolerance.

C. On the Delivery Notice, Seller shall provide to Buyer written notice of the Trade Seller intends to assign to Buyer. Such notice shall identify the Trade with particularity and the Eligible Mortgage Loans to be delivered which are eligible for inclusion within the security covered by the Trade.

D. The assignment of the Trade shall be effectuated, at Buyer's option, either by assignment of the Trade pursuant to the form attached hereto as Exhibit C or by the cancellation through the applicable Approved Investor of the Trade in Seller's name and the reissuance of the Trade in the name of Buyer or by such other means as Buyer shall reasonably require.

E. Notwithstanding any assumption or acceptance of a Trade by Buyer, Seller hereby acknowledges, understands and agrees that Buyer shall have no obligation to deliver all or any of the Eligible Mortgage Loans being purchased hereunder against any Trade assumed by Buyer and that Buyer will be free to pair off the Trade being assumed, to reassign the Trade to a third party, to fully cancel the Trade or to make any other disposition of the Trade that Buyer, in its sole discretion, shall determine.

## V. PURCHASE PRICE, ADJUSTMENTS AND SERVICING RELEASED PREMIUMS

A. Buyer shall purchase each Eligible Mortgage Loan delivered for sale by Seller to Buyer pursuant to the AOT Program for a purchase price (the "Mortgage Loan Purchase Price") which shall be calculated by multiplying the unpaid principal balance of the applicable Eligible Mortgage Loan by the percentage which is equal to the Trade Price (expressed as a percentage of par) on the Trade associated with the Delivery in which the Eligible Mortgage Loan is included. Additionally, the Mortgage Loan Purchase Price shall be adjusted by any Carry Adjustment, buyup or buydown fees, impound balances, accrued interest, and other adjustments or fees provided for in the Flow Commitment or the Guide.

4

**B.** Additionally, Buyer shall pay Seller a servicing released premium ("Servicing Released Premium") on each Eligible Mortgage Loan purchased, which shall be calculated by multiplying the unpaid principle balance of such Eligible Mortgage Loan by the applicable Servicing Released Premium percentage provided for in the Flow Commitment.

**C.** Buyer shall use its best efforts to pay the Mortgage Loan Purchase Price and Servicing Released Premium with respect to each Eligible Mortgage Loan within five (5) Business Days following the Receipt Date (the actual date of purchase being the "Purchase Date").

## VI. LOAN CHARACTERISTICS

Seller represents that the characteristics of all Eligible Mortgage Loans to be delivered by Seller hereunder shall fully conform to the required characteristics set forth in this AOT Flow Addendum, the Flow Commitment and the Guide.

## VII. UNDERWRITING

Each Loan purchased pursuant to the AOT Program shall be underwritten by Seller in accordance with the underwriting guidelines and the lending requirements set forth in the Guide, the requirements of FHLMC, FNMA, GNMA, FHA or VA, as applicable, and the guidelines of any applicable mortgage insurance companies. Seller shall be responsible for ensuring that Eligible Mortgage Loans submitted to Buyer comply with all terms and conditions of this AOT Flow Addendum and the aforementioned requirements and guidelines. Conventional Mortgage Loans that do not conform to the standard program parameters or underwriting guidelines of FNMA or FHLMC, but for which Seller received a waiver from FNMA or FHLMC, as applicable may not be delivered hereunder unless Seller has obtained the prior written consent of Buyer prior to the delivery of such Loans to Buyer.

Buyer shall have the right, but not the obligation, to underwrite any Eligible Mortgage Loan submitted for purchase pursuant to this AOT Flow Addendum, the LPA and the Guide or otherwise ensure that any Eligible Mortgage Loan submitted for purchase complies with all of the terms and conditions of this AOT Flow Addendum, the LPA and the Guide; provided that the existence of this right shall not affect in any way Seller's obligations hereunder, including without limitation, Seller's repurchase obligations, and Seller's hold harmless obligations under the LPA.

## VIII. TIMING OF DELIVERIES/PAIR OFF FEES

Seller agrees to deliver all Eligible Mortgage Loans associated with a particular Trade on or before the applicable Final Delivery Date related to that Trade.  Exhibit E may be modified from time to time by Buyer in its sole and absolute discretion.

In the event that Seller fails to deliver an Eligible Mortgage Loan applicable to an Assignment of Trade by the related Final Delivery Date established for that Assignment of Trade, Seller shall pay Countrywide a mark to market pair-off fee (the "Pair-Off Fee") which shall be calculated by multiplying the principal balance of the Eligible Mortgage Loan(s) not delivered by a percentage equal to the sum of the following:

1. An administrative fee equal to the greater of 0.125% of the Shortfall Amount or $100; plus

2. The positive difference, if any, between (x) the bid price (expressed as a percent) obtainable by Countrywide on Final Delivery Date for the Associated Security which was designated for the Eligible Mortgage Loan, and (y) the price offered by Countrywide, and accepted by Seller for such non-delivered Loan pursuant to the Assignment of Trade.

5

## IX.    REJECTION OF MORTGAGE LOANS

A.    In the event Seller delivers a mortgage Loan on or prior to the Mandatory File Receipt Date and Buyer rejects such Mortgage Loan (a "Rejected Loan") because any of the documentation relating to such Loan, or Seller, as applicable, fails to satisfy or breaches any of the criteria, requirements, representations or warranties set forth in this AOT Flow Addendum, the Term Sheet, the LPA or the Guide, then Seller shall have the right to cure the deficiency giving rise to the rejection or to substitute an Eligible Mortgage Loan, provided that such cure is completed, and in the case of a substituted Loan, the Eligible Mortgage Loan is delivered, reviewed and accepted by Buyer prior to the Suspension Cure Date.

B.    In the event Seller fails to cure the deficiency giving rise to a Rejected Loan prior to the Suspension Cure Date, or to substitute an acceptable Eligible Mortgage Loan which is reviewed and accepted by Buyer by the Suspension Cure Date, the Buyer at its sole option may send such Rejected Loan back to Seller or allow Seller additional time to cure the deficiency giving rise to the rejection.  In any event, Seller shall pay Buyer immediately upon receipt of notice from Buyer:

1.    The Administrative fee, plus:

2.    the amount of any pair-off loss if a Rejected Loan is sent back to Seller and no substitute Eligible Mortgage Loan is received and accepted by Buyer prior to the applicable Suspension Cure Date.  Such pair-off loss will be calculated by multiplying the unpaid principal balance of the Rejected Loan by the positive difference, if any, between (a) the bid price (expressed as a percentage) obtainable by Countrywide for the related Associated Security on the date the Rejected Loan is sent back to Seller, and (b) the price offered by Countrywide and accepted by Seller for such Rejected Loan,  pursuant to the Assignment of Trade, plus;

3.    An interest fee calculated at the Applicable Security Coupon Rate associated with the Rejected Loan and multiplied by the aggregate unpaid principal balance of such Rejected Loan for the number of days between the Suspension Cure Date and either the date of the pair-off or the date that a substitute Eligible Mortgage Loan submitted to and accepted by Buyer for purchase is purchased.

## X.    REPURCHASE OF MORTGAGE LOANS

A.    In the event that Buyer, FNMA, FHLMC, GNMA, FHA or VA as applicable, reject a Mortgage Loan prior to the date such Loan is sold to them or pooled into a mortgage backed security, and Buyer has purchased the rejected Mortgage Loan from Seller, then Seller shall repurchase such Mortgage Loan, and Buyer shall have all other remedies as set forth in the LPA.  In addition, Seller shall pay Buyer the applicable amounts calculated pursuant to Paragraph IXB above.

B.    In each of the cases set forth in Paragraphs IXA, IXB and X.A above, Seller shall also indemnify and hold Buyer harmless from and against all costs, expenses and other charges incurred by the Buyer as provided for in the LPA and Guide.

## XI.    COMMITMENT PERIOD

The term of this AOT Addendum will extend from December 1, 1996, to May 31, 1997, and on May 31, 1997, this AOT Addendum shall terminate;  however, this AOT Addendum may be extended by the written consent of both Buyer and Seller.

6

**XII.**   **TERMINATION**

Notwithstanding the commitment period specified in Section XI above, this AOT Flow Addendum may be terminated by the mutual consent of Buyer and Seller or upon the giving of 30 days notice by either party to the other. Notice shall be effective the earliest of (i) received, (ii) four (4) days after being sent by certified or registered U.S. Mail, or (iii) two (2) days after being delivered by an overnight courier. Should Seller breach any of the terms or conditions of this AOT Flow Addendum, the LPA or the Guide, Buyer may terminate this AOT Flow Addendum immediately without notice to Seller.  Termination of this AOT Flow Addendum shall not in any way affect either Seller's or Buyer's obligations, representations, warranties or indemnifications with respect to Eligible Mortgage Loans already purchased by, or Trades already assigned to, Buyer; provided, however, that Buyer may immediately terminate its obligations hereunder without notice and immediately re-assign any unfilled Trades and/or return any Eligible Mortgage Loans not purchased back to Seller, and Seller shall accept such re-assignment or return, as applicable, if Buyer reasonably determines that there has been any non-performance, deception, fraud, concealment or material misrepresentation by Seller in performing any of its duties, obligations, responsibilities or actions undertaken in connection with this AOT Flow Addendum including but not limited to Seller's:

(i)      origination or servicing of the Eligible Mortgage Loans;

(ii)     purchase or assignment of any Trade;

(iii)    assignment or delivery of any Eligible Mortgage Loan to Buyer;

(iv)    making of any representation or warranty;

(v)     performance of its repurchase obligations;

(vi)    adjudication as a bankrupt, insolvency or application for or consent to the appointment of a receiver, trustee, liquidator, custodian or similar official for itself or any of its properties or assets;

(vii)   assignment or attempt to assign any of its rights or obligations under this AOT Flow Addendum without the prior written consent of Buyer;

(viii)  breach any of its obligations under this AOT Flow Addendum;

(ix)    failure to be a qualified originator of Eligible Mortgage Loans in any jurisdiction where mortgaged property securing any Eligible Mortgage Loan is located.

In such event, Buyer shall be entitled to avail itself of all remedies as set forth in the AOT Flow Addendum, the LPA and the Guide.

Additionally, Buyer may terminate this AOT Flow Addendum with thirty (30) days written notice to Seller should any Federal or State law be enacted which adversely affects the value of the servicing rights being acquired, including, but not limited to, changes in law impacting interest on escrow balance requirements.

**XIII.**   **FINANCIAL STATEMENTS**

Seller shall provide Buyer with interim financial statements and other information at least quarterly within sixty (60) days following the end of each quarter.  Seller shall provide audited financial statements certified by an independent certified public accountant within one hundred (100) days following the end of Seller's fiscal year.

7

XIV.   **RIGHT OF OFFSET AND DELIVERY OF PAYMENTS**

     A.      In addition to any rights now or hereafter granted under this AOT Flow Addendum, the LPA or Guide by applicable law or otherwise, and not by way of limitation of any such rights, Buyer is hereby authorized at any time or from time to time, without presentment, demand, protest or other notice of any kind to Seller or to any other person, any such notice being hereby expressly waived, to set off and to appropriate and apply any and all amounts at any time owing by Buyer to or for the credit or the account of Seller against and on account of the obligations and liabilities of Seller to Buyer under this AOT Flow Addendum, irrespective of whether or not Buyer shall have made any demand therefor.

     B.      Except as expressly otherwise set forth in this AOT Flow Addendum, the LPA or Guide, any amounts due from Seller to Buyer pursuant to any provision of this AOT Flow Addendum, the LPA or Guide shall be remitted by Seller to Buyer no later than five (5) Business Days from Seller's receipt of notice from Buyer of the amounts due hereunder.

XV.   **EXHIBITS**

All exhibits attached hereto or referred to in this AOT Flow Addendum are incorporated by reference into this AOT Flow Addendum and made a part hereof.

XVI.   **ASSIGNMENT**

Seller may not assign its rights or obligations under this AOT Flow Addendum without the prior written consent of Buyer.  This AOT Flow Addendum shall be binding and inure to the benefit of Buyer's successors and assigns.

**COUNTRYWIDE HOME LOANS, INC.**                    **ComUnity Lending**

By:    Andrew Gissinger III                    By:    CHONG  HONG
         Senior Vice President

Date:   December 10, 1996                    Date:   DECEMBER  16 /1996

8

*865*

## FIRST AMENDMENT TO THE ASSIGNMENT OF TRADE FLOW
## ADDENDUM AND DIRECT TRADE FLOW ADDENDUM

This First amendment ("First Amendment") to the Assignment of Trade (AOT) Flow Addendum and the Direct Trade Flow Addendum (the "Addenda") to that Loan Purchase Agreement (the "LPA") dated July 28, 1994, by and between Countrywide Home Loans, Inc. (fka Countrywide Funding Corporation), a New York corporation ("Buyer"), and ComUnity Lending, ("Seller"), is entered into as of the 3rd day of June, 1997. All capitalized terms used in this First Amendment, to the extent not otherwise defined in this Amendment, shall have the respective meanings for such terms set forth in the Addenda.

### R E C I T A L S

A.    Buyer and Seller entered into that certain Assignment of Trade Flow Addendum and that certain Direct Trade Flow Addendum both dated December 16, 1996, whereby Buyer agreed to purchase from Seller and Seller agreed to sell to Buyer of all of its right, title and interest in those certain FHA, VA and/or Conventional mortgage loans to be pooled by Buyer into Mortgage Backed Securities guaranteed by the Government National Mortgage Association (GNMA), Federal National Mortgage Association (FNMA) and/or Federal Home Loan Mortgage Corporation (FHLMC).

B.    BUYER and SELLER desire to amend the AOT and Direct Trade Terms Sheet and the Addenda, as set forth in this First Amendment.

In consideration of the mutual promises, covenants, and conditions hereinafter set forth, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree that the AOT and Direct Trade Flow Commitment and the Flow Addenda shall be further amended to read as follows:

The term of the Addenda will extend to June 30, 1997, and on June 30, 1997, the Addenda shall terminate; however, the Addenda may be extended by the written consent of both Buyer and Seller.

The terms of this Amendment shall automatically expire on June 10, 1997 unless, prior to that date, Seller has executed this Amendment and delivered the executed copy to Buyer.

All other terms and conditions shall remain the same.

IN WITNESS WHEREOF, the parties have caused this document to be executed by their proper corporate officers as of the day and year first above written.

**COUNTRYWIDE HOME LOANS, INC.**          **COMUNITY LENDING**

By:_____        _____
        Andrew Gissinger III        date          Name    Thong Hong    Date 6/3/97
        Senior Vice President                      Title    Sr. Vice President

SENT BY:COUNTRYWIDE     : 6-30-97 : 16:00 : CFC CORRES. LENDING.→     408 281 9571:# 2/ 2

*869.*

## SECOND AMENDMENT TO THE ASSIGNMENT OF TRADE FLOW
## ADDENDUM AND DIRECT TRADE FLOW ADDENDUM

This second amendment ("Second Amendment") to the Assignment of Trade (AOT) Flow Addendum and the Direct Trade Flow Addendum (the "Addenda") to that Loan Purchase Agreement (the "LPA") dated July 28, 1994, by and between Countrywide Home Loans, Inc. (fka Countrywide Funding Corporation), a New York corporation ("Buyer"), and ComUnity Lending, ("Seller"), is entered into as of the 30th day of June, 1997. All capitalized terms used in this Second Amendment, to the extent not otherwise defined in this Amendment, shall have the respective meanings for such terms set forth in the Addenda.

### R E C I T A L S

A.     Buyer and Seller entered into that certain Assignment of Trade Flow Addendum and that certain Direct Trade Flow Addendum both dated December 16, 1996, whereby Buyer agreed to purchase from Seller and Seller agreed to sell to Buyer of all of its right, title and interest in those certain FHA, VA and/or Conventional mortgage loans to be pooled by Buyer into Mortgage Backed Securities guaranteed by the Government National Mortgage Association (GNMA), Federal National Mortgage Association (FNMA) and/or Federal Home Loan Mortgage Corporation (FHLMC).

B.     BUYER and SELLER desire to amend the AOT and Direct Flow Commitment and the Addenda, as set forth in this Second Amendment.

In consideration of the mutual promises, covenants, and conditions hereinafter set forth, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree that the AOT and Direct Trade Flow Commitment and the Addenda shall be further amended to read as follows:

The term of the Addenda will extend to July 31, 1997, and on July 31, 1997, the Addenda shall terminate; however, the Addenda may be extended by the written consent of both Buyer and Seller.

The terms of this Amendment shall automatically expire on July 7, 1997 unless, prior to that date, Seller has executed this Amendment and delivered the executed copy to Buyer.

All other terms and conditions shall remain the same.

IN WITNESS WHEREOF, the parties have caused this document to be executed by their proper corporate officers as of the day and year first above written.

COUNTRYWIDE HOME LOANS, INC.                     ComUnity Lending

By:_____                     _____  7-1-97
       Andrew Gissinger III        date           Name   Thong Hong      Date
       Senior Vice President                       Title  DARRYL FRY
                                                          PRESIDENT

Mar-25-98  03:23pm  From-COUNTRYWIDE                    6266664976              T-316  P.03/11  F-559



**CORRESPONDENT LENDING**

35 North Lake Avenue
Pasadena, California 91101
(800) 394-4554

August 18, 1997

Mr Thong Hong
Senior Vice President
**ComUnity Lending**
175 Bernal Road, Suite 260
San Jose, CA  95119

RE:    **Flow Commitment**

Dear Mr. Hong

I am writing to confirm the terms under which Countrywide Home Loans, Inc. (fka Countrywide Funding
Corporation) ("Countrywide") would enter into an agreement for the purchase of Loans from ComUnity
Lending ("ComUnity" or "Seller") under Countrywide's "Assignment of Trade Program" ("AOT Program") or
"Direct Trade Program" as described below:

1    GENERAL

     This Flow Commitment is an Amendment to and a part of the Assignment of Trade Flow Commitment
     Addendum and Direct Trade Flow Commitment Addendum, both dated December 10, 1996, and
     entered between the parties as of December 16, 1996.

     Under the AOT program or Direct Trade Program, Seller shall deliver qualifying Mortgage Loans to
     Countrywide in groups rather than on an individual basis. Each such delivery of a group of Loans shall
     hereinafter be referred to as a "Delivery." The required minimum aggregate principal balance of a
     Delivery, as discussed below, shall hereinafter be referred to as the "Minimum Delivery Amount."

2.   PROGRAM DESCRIPTION/DELIVERY OPTIONS:

     a.   Assignment of Trade Program

     Under the AOT Program, promptly after receipt by Countrywide of each Delivery from Seller and prior
     to Countrywide's purchase of the Loans comprising such Delivery, Seller shall assign to Countrywide
     a corresponding trade (a "Third Party Trade") for the forward sale of a mortgage backed security,
     entered into by Seller with a Countrywide authorized securities dealer. The individual mortgage Loans
     comprising a Delivery related to a particular Third Party Trade, shall in every way qualify for inclusion
     into the mortgage backed security which is the subject of the Third Party Trade.  The minimum face
     amount of each Third Party Trade assigned to Countrywide and the corresponding Minimum Delivery
     Amount shall be $500,000 for Third Party Trades covering FNMA MBS, FHLMC PC, GNMA I and
     GNMA II securities. After Countrywide accepts assignment of a Third Party Trade, Countrywide shall
     purchase each mortgage Loan comprising the related Delivery at a purchase price equal to the price
     to be paid Countrywide for the security as specified on the Third Party Trade, and Countrywide shall
     further pay Seller a Carry Adjustment and the servicing released premiums as specified below.

     b.   Direct Trade Program

     Under the Direct Trade Program, Seller shall enter into a trade directly with Countrywide, (a "Direct
     Trade") rather than assigning a Third Party Trade. Under this delivery option, Loans shall be delivered
     in a manner similar to the AOT program, except as discussed below:

Mar-25-98  03:23pm  From-COUNTRYWIDE                    6266664976              T-316  P.04/11  F-559

*ComUnity Lending - Flow Commitment*                              *August 18, 1997*        2

    i)    The Minimum Delivery Amount applicable to each Direct Trade shall be $250,000.

    ii)    Individual Loans comprising a Delivery and which are the subject of a Direct Trade may be of different Loans types (e.g. conventional and government, 30 Year and 15 Year, etc.) and may have note rates that would not otherwise qualify all such Loans for inclusion in the same mortgage backed security.

    iii)    All Loans comprising a Delivery shall be delivered to and received by Countrywide within the Delivery Period for the related Direct Trade. Upon entering into a Direct Trade, Seller shall have a mandatory obligation to deliver all Loans comprising the Delivery within such Delivery Period, such that any portion of the Delivery which is not filled within such time frame shall be subject to a mark to market pair-off fee which Seller shall pay to Countrywide, if due.

    iv)    Countrywide shall price each individual Loan which is the subject of a Direct Trade separately at a price equal to the bid price obtainable by Countrywide at the time of the Direct Trade, for the forward sale of the mortgage backed security. To the extent that the individual Loan being priced is a conventional Loan and can be included in either a FNMA MBS or FHLMC PC Gold security, Seller shall have the option of selecting which of the two security types Countrywide is to base its price quote on. The issue date and related forward settlement date of the Applicable Security on which the Loan price shall be based, will be determined by reference to that date during the month on which the corresponding Delivery is to be received by Countrywide pursuant to the Applicable Delivery Date.

3.    **Term of Contract:**    The term of this commitment shall be six (6) months commencing August 18, 1997, and ending February 28, 1998, provided however, no Loans that are originated in Guam may be delivered under this agreement until September 1, 1997

4.    **Loan types:**    Loans qualifying for delivery hereunder shall be FNMA and FHLMC fixed rate conforming and FHA insured and VA guaranteed fixed rate and FHA insured adjustable rate mortgage Loans underwritten, closed, and delivered pursuant to Countrywide's Correspondent Lending Division's Seller Manual (the "Guide"), provided, however, that for Loans originated in the territory of Guam, no VA loans may be delivered, and all conventional Guam Loans delivered hereunder shall be priced and underwritten to FHLMC fixed rate conforming guidelines, have replacement cost typhoon insurance, and have a Loan to Value ("LTV") ratio equal to or less than 80.00% and shall not require Mortgage Insurance ("MI").

Mar-25-98   03:24pm   From-COUNTRYWIDE                    6266664976              T-316   P.05/11   F-559

*Comunity Lending - Flow Commitment*                                    *August 18, 1997*      3

5.    Delivery volume:                A minimum of $10 million and a maximum of $20 million
                                      aggregate principal balance per month.

         •   If at the end of the term of this contract Seller has not delivered
             the minimum aggregate principal balance, defined as the
             lesser of $60 million of non-Guam Loans or 60% of the non-
             Guam Loans originated by the Seller between August 1, 1997
             and January 31, 1998 that are eligible under this agreement,
             Seller hereby agrees that the difference between the minimum
             aggregate principal balance and the actual unpaid aggregate
             principal balance (UPB) delivered shall be subject to a pair-off
             fee to be paid to Countrywide.  Said fee shall be calculated by
             multiplying the difference between the minimum aggregate
             principal balance and the actual UPB delivered by 0.25%, and
             such fee shall be assessed at the end of the commitment
             period. Seller further agrees to immediately pay the amount
             billed upon receipt of written invoice from Countrywide.

6.    Types of trades which may be        FNMA MBS      FHLMC GOLD PC
      assigned (under AOT Program)         GNMA I        GNMA II
      or on which Direct Trade prices
      will be based:
                                          NOTE:  Guam loans may only be delivered against
                                          FHLMC GOLD Assignments of Trade and/or priced and
                                          delivered against FHLMC GOLD PCs in the case of
                                          Direct Trades.

7.    Definitions:                    "Delivery": the group of Loans to be delivered for purchase
                                      associated with a particular trade.

                                      "Delivery Period": The period of time agreed to pursuant to the
                                      terms of a Trade by which Seller shall be obligated to deliver
                                      complete mortgage Loans files to Countrywide for the Eligible
                                      Mortgage Loans covered by the Trade.

                                      "Net Interest Spread":  An annualized rate equal to the
                                      difference between (x) the note rate on a Loan prior to the
                                      Applicable Security Settlement month and the Applicable
                                      Security Coupon yield during the settlement month, and (y)
                                      0.50% plus the 1 month LIBOR rate at the time of funding for a
                                      loan.

                                      "Carry Adjustment"  An adjustment to the FNMA MBS Price,
                                      FHLMC PC Price, GNMA I Security Price or GNMA II Security
                                      Price, equal to the Net Interest Spread for the period between
                                      the Loan Purchase Date and the day prior to the PSA
                                      settlement date of its Applicable Security. For purposes of this
                                      calculation, a 365 day year shall be used

                                      "Final Delivery Date": The last day of a Delivery Period as
                                      published in Countrywide's delivery schedules which shall be
                                      based on the applicable Security Settlement Month